**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE JPMORGAN TREASURY FUTURES
SPOOFING LITIGATION

Case No.: 1:20 Civ. 03515

Hon. Paul A. Engelmayer

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT WITH
JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P.
MORGAN SECURITIES LLC, AND J.P. MORGAN FUTURES, INC.**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .....................................................................................................................3

I.     The Proposed Settlement Meets the Standard for Preliminary Approval .....................4

    A.    The Settlement is Procedurally Fair ........................................................................5

        1.    Class Plaintiffs and Interim Co-Lead Class Counsel Have Adequately Represented the Interests of the Class ............................................................ 5

        2.    The Proposed Settlement is the Product of Arm's Length Negotiations .......... 6

    B.    The Proposed Settlement in Substantively Fair .....................................................8

        1.    The Cost, Risks, and Delay of Trial and Appeal Favor the Settlement ........... 8

        2.    The Remaining *Grinnell* Factors Support Approval of the Settlement ......... 11

        3.    The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(c)(2)(C)(ii) ...................................................................... 14

        4.    The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief ............................................. 16

        5.    There are no Unidentified Agreements that Impact the Adequacy of the Relief for the Settlement Class .................................................................................. 17

        6.    The Settlement Treats the Settlement Class Equitably and Does Not Provide any Preferences .............................................................................................. 18

II.    The Court Should Conditionally Certify the Proposed Settlement Class ...................19

    A.    The Proposed Class Meets the Requirements of Rule 23(a) .................................19

        1.    Numerosity ..................................................................................................... 19

        2.    Commonality ................................................................................................... 19

        3.    Typicality ....................................................................................................... 20

        4.    Adequacy ........................................................................................................ 21

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ................................................21

III.    The Court Should Approve the Proposed Class Notice Plan and A.B. Data, Ltd. as Settlement Administrator .........................................................................................23

IV.    The Court Should Appoint Citibank, N.A. As Escrow Agent ....................................25

V.    Proposed Schedule of Events .........................................................................................25

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................... 4, 12

*Bolivar v. FIT Int'l Grp. Corp.*,
   No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) ............................... 10

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................ 8, 11

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)...................................................................................... 19

*Dial Corp. v. News Corp.*,
   314 F.R.D. 108 (S.D.N.Y. 2015) ........................................................................... 21

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................... 17

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984*)* ................................................................. 13, 16

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
   271 F. App'x 41 (2d Cir. 2008) .............................................................................. 24

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ......... 20

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012).............................................................................. 19, 22

*In re Amaranth Nat. Gas Commodities Litig.*,
   269 F.R.D. 366 (S.D.N.Y. 2010) ........................................................................... 23

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................... 12

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................ 5

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   No. 12-md-2330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)............................ 18

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .................................................................................. 12

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................ 23

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) .......................................................................... 5

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01MDL1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .............................. 4

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009). ....................................................................... 10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................ 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ................................................................................. 20

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
357 F.3d 800 (8th Cir. 2004) .............................................................................. 18

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 12

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......................................................... passim

*In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*,
No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) ....................... 9

*In re Michael Milken and Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................ 7

*In re Nasdaq Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................ 11

*In re Nat. Gas Commodities Litig.*,
231 F.R.D. 171 (S.D.N.Y. 2005) .................................................................. 20, 22

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10 Civ.7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................ 12

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 6, 7, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................... passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................................ 10

*In re Platinum and Palladium Commodities Litig.*,
   No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .............................. 4

*In re Sinus Buster Products Consumer Litig.*,
   No. 12 Civ. 2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........................... 12

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ................................ 4

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..................................................................... 9

*In re Tronox Inc.*,
   No. 14 Civ. 5495, 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ........................... 13

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................... 10

*Kelen v. World Fin. Network Nat. Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) ............................................................................. 7

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   244 F.R.D. 469 (N.D. Ill. 2007) .......................................................................... 23

*Meredith Corp. v. SESAC LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ......................................................................................... 24

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ............................................................................... 13

*Ploss v. Kraft Foods Grp., Inc.*,
   431 F. Supp. 3d 1003 (N.D. Ill. 2020) ........................................................... 20, 22

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ............................................................................... 21

*Sullivan v. DB Invs., Inc.*,
   669 F.3d 273 (3d Cir. 2011) ............................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................ 4, 18, 23

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988)..................................................................................... 24

## **Rules**

FED. R. CIV. P. 23(e)(2)(C) et seq. .................................................................. 8, 11, 17

FED. R. CIV. P. 23(e)(1)............................................................................................ 4, 24

FED. R. CIV. P. 23(e)(2).................................................................................................. 4

FED. R. CIV. P. 23(e)(2)(A) ...................................................................................... 5, 6

FED. R. CIV. P. 23(e)(2)(B) ....................................................................................... 5, 6

FED. R. CIV. P. 23(e)(3)................................................................................................ 17

FED. R. CIV. P. 23(e)(2)(D) ..................................................................................... 8, 18

FED. R. CIV. P. 23(e) 2003 Advisory Comm. Notes Subdiv. (e).................................. 18

FED. R. CIV. P. 23(a) et seq. ................................................................................... 19, 21

FED. R. CIV. P. 23(b)(3).......................................................................................... 21, 22

FED. R. CIV. P. 23(g)................................................................................................... 21

## **Other Authorities**

WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ...................... 7

WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) .................... 15

MANUAL FOR COMPLEX LITIGATION, FOURTH  § 21.631 (2004) .................................. 18

Plaintiffs Charles Herbert Proctor, III, Synova Asset Management, LLC, Robert Charles Class A, L.P., Thomas Gramatis, Budo Trading LLC, Kohl Trading LLC, M & N Trading L.L.C., Port 22 LLC, and Rock Capital Markets LLC (collectively, "Class Plaintiffs") move under Federal Rule of Civil Procedure 23 for preliminary approval of a class action settlement with Defendants JPMorgan Chase & Co., J.P. Morgan Clearing Corp. (now known as J.P. Morgan Securities LLC), J.P. Morgan Securities LLC, and J.P. Morgan Futures, Inc. (now known as J.P. Morgan Securities LLC) (collectively, "Defendants" or "JPMorgan").[1]

## PRELIMINARY STATEMENT

This is a class action alleging Defendants violated the Commodity Exchange Act, 7 U.S.C. §§ 1 *et. seq.* ("CEA"), and the common law by intentionally manipulating the prices of U.S. Treasury futures contracts ("U.S. Treasury Futures") and options on those contracts ("Options on U.S. Treasury Futures") traded on United States-based exchanges from April 1, 2008 through January 31, 2016 (the "Class Period"). Specifically, Plaintiffs alleged that JPMorgan utilized a manipulative technique called "spoofing," which involved purposefully placing orders with the intent to cancel prior to execution to send false and illegitimate supply and demand signals to an otherwise efficient market.[2] The Parties have reached an agreement to settle this Action in exchange for a $15,700,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class and the dismissal of all claims against Defendants. Class Plaintiffs and Interim Co-Lead Class Counsel respectfully submit that the proposed Settlement is an excellent

---

[1] All capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement 0f Settlement dated September 8, 2021 (the "Settlement Agreement") attached as Exhibit 1 to the accompanying Joint Declaration of Vincent Briganti and Karen M. Lerner ("Joint Decl."), unless otherwise noted. All references to "¶" and "Ex." are to the "Joint Decl.", unless otherwise noted. Internal case citations and quotation marks are omitted and ECF citations are to the docket, unless otherwise noted.

[2] Plaintiffs assume the Court is familiar with the factual allegations and procedural history of this Action. A detailed description of the factual allegations and procedural history is contained in the Joint Decl., filed contemporaneously.

result for the Settlement Class and move this Court for preliminary approval of the proposed Settlement.

Class Plaintiffs and Interim Co-Lead Class Counsel worked hard to achieve this excellent result for the Settlement Class.  As discussed below and in the accompanying Joint Declaration, Class Plaintiffs and JPMorgan reached this Settlement only after months of hard-fought, arm's-length negotiations supervised by a highly respected mediator, the exchange of substantial amounts of transaction data and other information, extensive presentations on liability and damages, and months of additional discussions regarding specific Settlement terms.  This meticulous, nearly year-long process resulted in the Settlement, which Class Plaintiffs and Interim Co-Lead Class Counsel believe to be fair, reasonable, and adequate.

Critically, the Settlement is separate from, and in addition to, JPMorgan's settlements with the U.S. Department of Justice ("DOJ"), the United States Attorneys' Office for the District of Connecticut ("USAOC"), and the Commodity Futures Trading Commission ("CFTC"). Accordingly, the Settlement significantly augments any recoveries that Class Members may be eligible for from the DOJ and USAOC's victim compensation payment amount ("VCPA")[3] and ensures that eligible Settlement Class Members will be compensated for damages caused by JPMorgan's spoofing in the U.S. Treasury Futures and Options on U.S. Treasury Futures market.

The Settlement also fully satisfies the requirements for preliminary approval.  First, the Settlement is procedurally fair, as Class Plaintiffs and Interim Co-Lead Class Counsel are adequate representatives for the Settlement Class, and the Settlement resulted from zealous arm's-length negotiations with JPMorgan.  Second, the terms of the Settlement are substantively fair.  Eligible Class Members will receive substantial relief, over and above any relief that may be available to

---

[3] *See* Deferred Prosecution Agreement ("DPA") ¶ 7, *U.S. v. JPMorgan Chase & Co.*, No. 20-cr-00175 (D. Conn. Sep. 29, 2020), ECF No. 11.

them through JPMorgan's settlements with the government.  The Settlement proceeds will be disbursed pursuant to a Distribution Plan designed with the assistance of experts and similar to such plans approved in other complex class action settlements involving futures and options transactions.  Third, the Settlement Class may be certified pursuant to the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).  Finally, Interim Co-Lead Class Counsel has prepared a robust notice program that will fully inform Class Members of their rights and options.

Class Plaintiffs respectfully ask that the Court preliminarily approve the Settlement so that notice may be provided to the Settlement Class.  Specifically, Class Plaintiffs respectfully request that the Court enter the Parties' agreed-upon Preliminary Approval Order, which will: (a) preliminarily approve the Settlement subject to later, final approval; (b) conditionally certify a Settlement Class with respect to the claims against JPMorgan; (c) preliminarily approve the proposed Distribution Plan (Ex. 6); (d) appoint Class Plaintiffs as representatives of the Settlement Class; (e) appoint Kirby McInerney LLP ("Kirby") and Lowey Dannenberg, P.C. ("Lowey") as Class Counsel for the Settlement Class; (f) appoint Citibank, N.A. ("Citibank") as the Escrow Agent for the Settlement; (g) appoint A.B. Data, Ltd. as the Settlement Administrator for the Settlement; (h) approve the proposed forms of Class Notice to the Settlement Class (Exs. 3-4) and the proposed Class Notice plan (*id.*, Ex. 2); (i) set a schedule for the events leading up to the Fairness Hearing; and (j) stay all proceedings in the Action except those relating to approval of the Settlement.  *See* [Proposed] Preliminary Approval Order, filed contemporaneously herewith.

## **ARGUMENT**

The proposed Settlement merits preliminary approval.  It provides a significant benefit for the Settlement Class in the face of substantial costs and risks associated with continued litigation of the Action.  It is also entitled to an initial presumption of fairness and adequacy as it is the result of arm's-length negotiations by experienced counsel supervised by an independent mediator.

I.       **The Proposed Settlement Meets the Standard for Preliminary Approval**

"Rule 23(e) requires court approval of a class action settlement." *In re Currency Conversion Fee Antitrust Litig.*, No. 01MDL1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005). The Second Circuit, therefore, acknowledges the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*; *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013) (noting that courts encourage early settlements as they provide immediate relief to class members and allow the judicial system to reallocate its limited resources elsewhere).

"Preliminary approval is generally the first step in a two-step process before a class action settlement is [finally] approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). The Court may preliminarily approve and direct notice of the proposed Settlement to the Settlement Class if it is likely that the Court, after a hearing, will find that the Settlement satisfies FED. R. CIV. P. 23(e)(2) and the Settlement Class may be certified. FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*").

In conducting a preliminary approval inquiry under amended Rule 23, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014); *see Payment Card*, 330 F.R.D. at 29. As demonstrated below, the Settlement warrants preliminary approval because it is both procedurally and substantively fair.

4

**A.    The Settlement is Procedurally Fair**

To assess procedural fairness, Rule 23 requires the Court to find that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

**1.    Class Plaintiffs and Interim Co-Lead Class Counsel Have Adequately Represented the Interests of the Class**

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[4] is met if the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation.  *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010).

Class Plaintiffs' interests are aligned with those of the Settlement Class.  Class Plaintiffs and Class Members transacted in Treasury Futures or Options on Treasury Futures during the Class Period and claim injury and losses from trading at artificial prices caused by JPMorgan's alleged manipulation.  *See* ECF No. 57 ¶¶ 19-27.  Consequently, the interests of Class Plaintiffs in proving liability and damages are entirely aligned with those of the Settlement Class, and there are no conflicting interests among Class Plaintiffs and the Settlement Class.

---

[4] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under Rule 23(a)(4).  *See Payment Card,*   330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context.  As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019).

In addition, this Court previously found that Interim Co-Lead Class Counsel had the requisite qualifications and experience in prosecuting complex class action litigation.  *See* ECF No. 37 (appointing Interim Co-Lead Class Counsel and discussing qualifications); *see also* Exs. 7-8.  Interim Co-Lead Class Counsel have diligently represented the interests of the Settlement Class in this litigation and will continue to do so.  Thus, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Lead Counsel, are satisfied.

### 2.    The Proposed Settlement is the Product of Arm's Length Negotiations

A proposed settlement enjoys a "strong initial presumption of fairness" when it results from arm's length negotiations by skilled and experienced counsel on both sides.  *See* FED. R. CIV. P. 23(e)(2)(B); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  The Settlement is the product of intensive arm's length negotiations that took place over the course of many months among experienced counsel and under the auspices of an experienced mediator.

Settlement discussions, which began in earnest in October 2020, consisted of a series of meetings, telephonic conferences, correspondence, and an extensive day-long formal mediation in the presence of an experienced mediator.  ¶¶ 17-20. Prior to the formal mediation session, Class Plaintiffs and Interim Co-Lead Class Counsel were well-informed about all material facts, including the strengths and weaknesses of their claims against JPMorgan.  ¶ 25.  Notably, Interim Co-Lead Class Counsel negotiated the right to obtain Mediation Information from JPMorgan, which consisted of, *inter alia*, U.S. Treasury Futures or Options on U.S. Treasury Futures data for JPMorgan transactions for the duration of the Class Period.  ¶ 18.  Thus, the Mediation Information provided Interim Co-Lead Class Counsel with additional information to evaluate JPMorgan's representations during settlement negotiations.  *Id*.

6

On February 16, 2021, the parties mediated this dispute before Jed D. Melnick, Esq. of JAMS, who is experienced in mediating complex class actions. *See* ¶¶ 17, 19. The involvement of an experienced and qualified mediator in settlement negotiations further affirms the fairness of the process. *See Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014).[5] Prior to the full-day, Zoom mediation, the Parties exchanged detailed mediation statements outlining their positions, which included robust analyses of potential damages and class wide impact. ¶ 19. The mediation sessions did not result initially in a settlement. *Id.* Following several weeks of additional negotiations, Mr. Melnick made a mediator's proposal to achieve an agreement on the basic terms of the Settlement, which the Parties accepted. ¶ 20. The Parties subsequently negotiated the terms of the Settlement Agreement. ¶¶ 21, 23, 24. At all times, the settlement negotiations were informed, hard-fought, and non-collusive. ¶¶ 25, 26.

Interim Co-Lead Class Counsel believe Class Plaintiffs' claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against JPMorgan. In recommending that the Court approve the Settlement, Interim Co-Lead Class Counsel have accounted for the uncertain outcome and the risks of further litigation and believe the Settlement confers significant benefits on the Settlement Class in light of the circumstances here. Accordingly, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber*, 171 F.R.D. at 125 (observing that "great weight" is given to advice of experienced counsel).

---

[5] *See also* WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator").

**B.      The Proposed Settlement in Substantively Fair**

Under Rule 23(e), the substantive fairness of a settlement is assessed by considering whether "the relief provided for the class is adequate," in light of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23 (e)(2)(C).  The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).  In the Second Circuit, courts also consider the factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"),[6] which overlap with the consideration of Rule 23(e)(2)(C)-(D).  *See Payment Card*, 330 F.R.D. at 29.  Both the Rule 23(e)(2)(C)-(D) and *Grinnell* factors support preliminary approval of the Settlement.

**1.      The Cost, Risks, and Delay of Trial and Appeal Favor the Settlement**

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36.  Evaluating the cost, risks, and delay of trial and appeal necessarily "implicates several *Grinnell* factors, including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.*

---

[6] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

In this case, Class Plaintiffs face significant litigation risks, which are amplified by the complexity of the market for Treasury Futures and Options on Treasury Futures, as well as the claims at issue.  *See* ECF No. 57 at pp. 11-21.  CEA cases are among the most complicated and risky class actions to pursue.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The case involves claims of commodity price manipulation in violation of the CEA.  Such claims have been notoriously difficult to prove . . . .").

Had the Parties not reached the Settlement now, it is likely that this case would have been litigated for years as the Parties vigorously contested liability and damages.  Indeed, JPMorgan has denied, and continues to deny, any liability to Class Plaintiffs.  While Class Plaintiffs are confident that they would have prevailed had JPMorgan filed a motion to dismiss, the possibility remained that the Court could dismiss Plaintiffs' claims.  *See*, *e.g.*, *In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*, No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) (dismissing CEA spoofing claims pursuant to Rule 12(b)(6))*.*

Based on their experience in similar complex class action cases, Interim Co-Lead Class Counsel anticipates discovery will be lengthy and costly if the Settlement is not approved. Prosecuting this action would have required the analysis of complex financial data, the creation of sophisticated damage models to help explain and prove the nature of JPMorgan's alleged misconduct, and the deciphering of intra-firm communications and documents, including chat room transcripts involving trader jargon.  Meanwhile, JPMorgan likely would have undertaken its own discovery, with the aim to provide its own evidence to create ambiguities that may refute or weaken Class Plaintiffs' evidence of market manipulation.  *See In re GSE Bonds*, 414 F. Supp. 3d at 694 ("Given that [ ] defendants contend that they can present a strong case against plaintiffs after discovery, there is no guarantee that plaintiffs will be able to prove liability.").

Expert discovery would also be inevitable given the complex subject matter of the Action, which in turn would likely lead to *Daubert* motion practice by both sides.  Class Plaintiffs would have retained additional experts to provide econometric and industry analysis, adding to the cost and duration of the case and triggering a "battle of the experts."  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation").  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Class certification in this action would raise complex legal and factual issues given the nature of the financial products and markets involved.  *See In re Currency Conversion Fee*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty").  While Plaintiffs are confident the Court would certify a litigation class, JPMorgan would have vigorously opposed the motion.  *See In re GSE Bonds*, 414 F. Supp. 3d at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").  The losing party would have undoubtedly sought interlocutory review, thus further extending the timeline of the litigation.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

JPMorgan almost certainly would have pursued extensive pre-trial motions, including summary judgment and motions *in limine*.  Even if liability were established, at trial, Class Plaintiffs bear the risk of proving actual damages to a jury.  *See, e.g.*, *Bolivar v. FIT Int'l Grp.*

*Corp.*, No. 12-cv-781, 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019) ("it is Plaintiffs who bear the burden of establishing their claimed damages to a reasonable certainty" in relation to a class action alleging commodity law violations among other claims).  Even where the government has secured a criminal guilty plea, civil juries have found no damages.  *See, e.g.*, Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07 MD 1827 (N.D. Cal. Sept. 3, 2013), ECF No. 8562.  Thus, there is a substantial risk that a jury might accept one or more of JPMorgan's damage arguments and award nothing at all or award less than the $15,700,000 that, if approved, would be available to the Settlement Class.  Even if Class Plaintiffs "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years if at all."  *In re GSE Bonds*, 414 F. Supp. 3d at 693 (cleaned up).[7]  Accordingly, each of these risks weighs in favor of preliminary approval.

2.     **The Remaining *Grinnell* Factors Support Approval of the Settlement**

The Second Circuit *Grinnell* factors not expressly encompassed in Rule 23(e)(2)(C)(i) also guide the Court in assessing whether the relief provided to the class is adequate; they include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Grinnell*, 495 F.2d at 463.  Each factor supports approval of the Settlement.

---

[7] *See also In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result.").

### a.      Reaction of the Class to the Settlement

Consideration of the reaction of the settlement class is generally premature at the preliminary approval stage.  *In re GSE Bonds*, 414 F. Supp. 3d at 699 n.1.  Nevertheless, Class Plaintiffs are sophisticated investors with significant financial expertise and are fully capable of assessing the Settlement's benefits.  ¶ 14.  Their support is highly probative of the likely reaction of other Class Members.  If objections are received following Notice dissemination, Interim Co-Lead Class Counsel will address those at the Final Approval stage.

### b.      Stage of the Proceedings

"[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Beckman,* 293 F.R.D. at 474-75.   The relevant inquiry for this factor, therefore, is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *accord In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[class counsel] have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'"  *AOL Time Warner*, 2006 WL 903236, at *10.[8]  Here, Interim Co-Lead Class Counsel were well-informed having conducted

---

[8] *See also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ.7493, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Products Consumer Litig.*, No. 12 Civ. 2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

an extensive pre-suit investigation. ¶ 15.  In addition, prior to conducting settlement negotiations, Interim Co-Lead Class Counsel negotiated the receipt of the Mediation Information.  ¶ 18.

### c.     Ability of JPMorgan to Withstand a Greater Judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *In re GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re Tronox Inc.*, No. 14 Civ. 5495, 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved—indeed, if it did, it is hard to imagine why a defendant would ever settle a case.").  Here, the financial obligation the Settlement imposes on JPMorgan is significant, particularly in light of the fact that it is on top of regulatory penalties JPMorgan has paid relating to the same conduct.  Therefore, that JPMorgan might be able to withstand a greater judgment does not undermine the reasonableness of the Settlement here.

### d.     Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Litigation Risks

The range of reasonableness factor weighs the settlement relief against the strength of the plaintiff's case, including the likelihood of a recovery at trial.  This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).  At preliminary approval, this factor is satisfied when there are no obvious doubts as to the adequacy of the settlement amount.

13

In Interim Co-Lead Class Counsel's view, the $15,700,000 aggregate settlement fund is an excellent result for the Settlement Class. *PaineWebber*, 171 F.R.D. at 125 (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Based on information currently available, Interim Co-Lead Class Counsel in consultation with their experts have preliminarily estimated class wide damages of $50 – $60 million, assuming Class Plaintiffs succeed on all triable issues. ¶ 22. The Settlement recovery is roughly 26.2% - 31.4% of estimated class wide damages.

Evaluating the Settlement Amount against the recovery the DOJ and USAOC received further demonstrates its reasonableness. *See* ¶¶ 8-11 (describing government settlements). According to the DPA, the DOJ and USAOC estimated that JPMorgan's spoofing caused at least $33,584,906 in losses to participants in the U.S. Treasury Futures market. DPA, ¶¶ 7, 15 & Ex. A ¶ 75. Class Plaintiffs respectfully submit that JPMorgan's spoofing of U.S. Treasury Futures caused greater losses, and as a result of Class Plaintiffs' and Interim Co-Lead Class Counsel's efforts, the total sum available for compensation to harmed market participants has been increased by almost 50%. While some Class Members may be eligible to receive proceeds from the victim compensation payment amount distributed the DOJ and USAOC, it is unclear to Class Plaintiffs if all Class Members may be eligible to recover. The Settlement provides a significant enhancement to Class Members, providing recovery for those who might not be eligible to receive money from the victim compensation payment amount, and increasing the total percentage of damages recovered for the Class.

### 3. The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(c)(2)(C)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate." *Payment Card*, 330 F.R.D.

14

at 40. Whether the plan of allocation is fair requires the Court to determine that the "allocation formula [has] a reasonable, rational basis, particularly if [the plan is] recommended by experienced and competent class counsel." *Id.*

Here, the Distribution Plan proposed for this Settlement was designed in consultation with financial experts, is similar to allocation plans that have been accepted in other cases, and is recommended by Interim Co-Lead Class Counsel. *See* Order Approving Class Notice Plan, *In re London Silver Fixing Antitrust Litig.*, Nos. 14 MD 02573 (S.D.N.Y Aug. 5, 2020.), ECF No. 464; Order Preliminarily Approving Class Action Settlement, *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill. Mar. 5, 2021), ECF No. 132. The proposed Distribution Plan is structured to be efficient to administer and simple for Class Members, thus incentivizing participation. *See* WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible").

To receive a portion of the Net Settlement Fund, Class Members will be required to submit a Proof of Claim and Release form ("Claim Form"). The Claim Form is straight-forward and simple, only requiring a claimant to provide certain background information and readily accessible information about their U.S. Treasury Futures and Options on U.S. Treasury Futures transactions, including the contract traded, trade date, volume, trade price, the option type, strike price, and premium (if applicable). *See* Ex. 5. This information is typical of what courts have permitted in other futures cases.[9]

---

[9] *See* Proof of Claim and Release, *In re Rough Rice Commodity Litig.*, No. 11 Civ. 618, (N.D. Ill. Mar. 4, 2015), ECF No. 164-6 (claim form requiring submission of, *inter alia*, trade date, contract traded, number of contracts, and transaction price for claims process involving futures contracts); *see also* Final Revised Proof of Claim, *In re London Silver Fixing Antitrust Litig.*, Nos. 14 MD 02573, 14 MC 02573 (S.D.N.Y. Aug. 5, 2020), ECF No. 463-7; Proof of Claim, *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill. Jan. 29, 2021), ECF No. 125-5.

Substantively, the Distribution Plan allocates the Net Settlement Fund *pro rata* to Authorized Claimants based on an estimate of the impact of JPMorgan's alleged spoofing on market transactions.[10]  *See* Ex. 6.  If all other factors are held constant, claimants with a higher trading volume can expect a proportionally larger allocation.  While volume is a core part of the distribution framework, the Distribution Plan also incorporates the impact of Defendants' alleged spoofing during the Class Period by incorporating the Futures Contract Specification Multiplier, which accounts for the frequency and the impact of Defendants' spoofing on U.S. Treasury Futures and Options on U.S. Treasury Futures.

The Distribution Plan satisfies Rule 23(e)(2)(C)(ii).  It ensures that the Settlement does not favor or disfavor any Class Members; nor does it discriminate against, create any limitations, or exclude from payments any persons or groups within the Settlement Class.

> **4.     The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief**

The proposed Settlement also does not grant excessive compensation to Lead Counsel. The Settlement does not provide for *any* specific award to Lead Counsel, and Lead Counsel will be compensated solely out of the Settlement Fund as may be approved by the Court.  Ex. 1 § 4.

Interim Co-Lead Class Counsel will limit their attorneys' fee request to no more than 33 $1/3$% of the Settlement Amount ($5,233,333.33), which may be paid upon final approval and will be allocated among Plaintiffs' Counsel in proportion to their contributions to the case.  Ex. 1 § 4(E), Ex. 3; *see In re "Agent Orange,"* 818 F.2d at 223.   An attorneys' fees request of 33 $1/3$% is comparable to the fees awarded in other cases of similar size and complexity.  *See* Order Awarding Attorneys' Fees, *In re London Silver Fixing Antitrust Litig.*, Nos. 14 MD 02573

---

[10] Class Members whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim will receive a minimum payment of $15.00.

(S.D.N.Y. Jun. 15, 2021), ECF No. 534 (awarding attorneys' fees of 30% of $38.00 million); Order Awarding Attorney's Fees, *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill. July 30, 2021), ECF No. 154 (awarding attorneys' fees of 33% of $15.00 million). In addition to the request for attorneys' fees, Interim Co-Lead Class Counsel will seek reimbursed litigation costs and expenses not to exceed $500,000 and Incentive Awards not to exceed a total of $45,000 for Class Plaintiffs' participation in this Action. *See Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonably incurred expenses may be reimbursed from the settlement fund); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (class representatives may be awarded an incentive award for their efforts).

Interim Co-Lead Class Counsel's Fee and Expense Application will be filed, with all supporting papers also posted on a website (the "Settlement Website") where Class Members can review them, as provided by the Preliminary Approval Order. By granting preliminary approval, the Court does not in any way pass upon the reasonableness of the Fee or Expense Application, which will be decided at the Settlement Hearing.

### 5. There are no Unidentified Agreements that Impact the Adequacy of the Relief for the Settlement Class

"Rule 23(e)(2)(C)(iv) requires courts to consider 'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'" *In re GSE Bonds*, 414 F. Supp. 3d at 696 (quoting FED. R. CIV. P. 23(e)(2)(C)(iv) and 23(e)(3)). Here, the Settlement Agreement included all such terms or specifically identifies all other agreements that relate to the Settlement, including the Supplemental Agreement. *See* Ex. 1 §§ 1(AA), 19(D); 23. The Supplemental Agreement provides JPMorgan a qualified right to terminate the Settlement Agreement under certain circumstances before final approval. Ex. 1 § 19(d). This type of

agreements is standard in complex class action settlements and does not impact the fairness of the Settlement.[11]   Therefore, the Supplemental Agreement does not weigh against approval.

> **6.    The Settlement Treats the Settlement Class Equitably and Does Not Provide any Preferences**

The Settlement also "treats class members equitably relative to each other."  FED. R. CIV. P. 23(e)(2)(D).  The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Funds among Authorized Claimants, a method courts have approved as fair, reasonable, and adequate.  *See, e.g.*, *Payment Card*, 330 F.R.D. at 47 (finding that "*pro rata* distribution scheme is sufficiently equitable").  All Class Members would release JPMorgan for the exact same claims based on the same factual predicate of this Action.  Where class members have received sufficient notice of the impact of the settlement, courts have enforced the bar on prosecuting released claims so long as they were based on the identical factual predicate and the class members were adequately represented.  *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800 (8th Cir. 2004) (affirming injunction against prosecution of claim released by a related class action where adequate notice of the release was given, and the class was adequately represented); *Wal-Mart Stores*, 396 F.3d at 112-13 (adopting the analysis of *In re Gen. Am. Life*).  Should a Class Member wish not to be bound by the release, that Class Member may elect to opt out of the Settlement.  The notice program will provide Class Members with information about opting out of the Settlement should they wish.  But absent opting out, each Class Member would be bound by the release.

---

[11] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-2330, 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *accord* MANUAL FOR COMPLEX LITIGATION, FOURTH  § 21.631 (2004) ("[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out."); *see also* FED. R. CIV. P. 23(e), 2003 Advisory Committee Notes, Subdiv. (e).

Because the Settlement's release and the Distribution Plan wholly avoid any improper preferences or discriminations, the Court should find that the Settlement satisfies this factor.

## II.      The Court Should Conditionally Certify the Proposed Settlement Class

As demonstrated below, the proposed Settlement Class meets the requirements of Rule 23(a), as well as at least one of the provisions of 23(b).  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  Accordingly, the Court should conditionally certify the Settlement Class as to the claims against JPMorgan.

### A.      The Proposed Class Meets the Requirements of Rule 23(a)

Rule 23(a) permits an action to be maintained as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a).

#### 1.      Numerosity

In cases like this one involving widely traded instruments, numerosity is readily satisfied. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed if a class has over 40 members).  There are at least hundreds of persons and entities that transacted in Treasury Futures and Options on Treasury Futures during the Class Period.  ¶ 30. Joinder would be impracticable, and Rule 23(a)(1) is satisfied.

#### 2.      Commonality

The commonality requirement under Rule 23(a)(2) is satisfied by a single common question of law or fact.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  A central allegation of Class Plaintiffs is that JPMorgan used spoofing to alter the perception of supply and demand and manipulate the prices of Treasury Futures and Options on Treasury Futures.

19

Proof of this distortion will be common to all Class members. *See In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 180–81 (S.D.N.Y. 2005) (commonality satisfied where class members' claims, "arise from a common course of conduct by the Defendants" and class members will have to engage in the same discovery and analysis "to establish the factual basis for each of the elements of a manipulation claim under the CEA."). There are additional legal and factual issues common to members of the Class, including: (1) whether JPMorgan's conduct violated the CEA; (2) the operative time periods of JPMorgan's alleged violations of the CEA; and (3) the appropriate measure of damages suffered by the Class. The proof required to establish JPMorgan's alleged unlawful conduct is common to all members of the Class and, therefore, Rule 23(a)(2) is satisfied.

### 3.      Typicality

The typicality standard is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, Class Plaintiffs' claims are typical because they arise from the same events or course of conduct that gives rise to the claims of the Settlement Class − namely, JPMorgan's alleged manipulation of the market for Treasury Futures and Options on Treasury Futures. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class."); *see also Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011 (N.D. Ill. 2020) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory."). All members of the Settlement Class, including Class Plaintiffs, seek redress for the impact JPMorgan's alleged manipulation had on their transactions. Because these are the same

20

elements that both Class Plaintiffs and the other members of the Settlement Class would have to prove separately if they brought individual actions, the typicality requirement is satisfied.

### 4.    Adequacy

As discussed above, there are no conflicts between Class Plaintiffs and members of the Settlement Class and the interests of Class Plaintiffs in proving liability and damages are wholly aligned with those of the Settlement Class. *See* Section I.A.1., *supra*. Moreover, Interim Co-Lead Class Counsel appointed by the Court are highly experienced in complex class action litigation, including cases involving complicated CEA claims. Accordingly, the requirements of both Rule 23(a)(4) and Rule 23(g) are satisfied.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, questions of law or fact common to the Settlement Class predominate over any individualized questions, and a class action is manifestly the superior method of adjudicating the controversy.

Predominance exists where the questions that are capable of common proof are "'more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). Here, proof of unlawful market manipulation by JPMorgan would consist of class-wide, common evidence that would "focus on [JPMorgan's] conduct, not on the actions of putative class members." *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 114 (S.D.N.Y. 2015). In addition, predominance is demonstrated, as in this case, where the impact of the asserted violation, as well as the damages arising out of the misconduct, can be shown on a class-wide basis. *See In re Am. Int'l Grp.*, 689 F.3d at 240 ("All plaintiffs here claim injury that

by reason of defendants' conduct . . . has caused a common and measurable form of economic damage. . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion.") (citing *Sullivan v. DB Invs., Inc.*, 669 F.3d 273, 338 (3d Cir. 2011).  The predominance element is satisfied in this case.

In CEA manipulation cases such as this one, courts consistently find that common issues of the existence and scope of the alleged manipulation predominate over individual issues.  *See In re Nat. Gas,* 231 F.R.D. at 180 (finding predominance satisfied in CEA case in light of Defendants' common course of conduct and the establishing the basis for plaintiffs' CEA claims would require the same evidence and analysis); *Ploss*, 431 F. Supp. 3d at 1014 ("Courts have found that common questions do predominate over individual questions in cases alleging price manipulation under the [CEA]").  This follows from the central nature of the manipulation in such cases.  The same proof required to establish Defendants' liability and to demonstrate Class Plaintiffs' injury would be used by all other Class Members to establish their injury and damages.  Here, the timing, nature, and impact of JPMorgan's alleged spoofing serve as that common nucleus of facts that links together each Class Member's claim.  As a result, the predominance requirement is satisfied.

The second element of the Rule 23(b)(3) analysis is that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).[12]  The superiority requirement is particularly applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems."  *In re Am. Int'l Grp.,* 689 F.3d at 242.

---

[12] As Rule 23(b)(3) further provides, "[t]he matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3).

Here, the superiority requirement is satisfied, particularly given the context of this being a Settlement Class, offering a common benefit to Class Members while leaving those who wish to continue to pursue their own individual actions free to do so.  Any Class Member's interest in individually controlling the prosecution of a separate claim is likely low given that the cost of litigating a claim individually would likely exceed the potential individual recovery. [13] Furthermore, hundreds of persons and entities traded Treasury Futures and Options on Treasury Futures during the Class Period, making a "class action the superior method for the fair and efficient adjudication of the controversy."  *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

As to whether any existing litigation impacts the superiority of this litigation, Defendants were subject to government prosecutions and settlements that involved at least in part, the factual predicate of this Action.  *See, e.g.,* ¶¶ 8-11.  While some Class Members may be eligible to receive proceeds from the VCPA, it is unclear whether all Class Members may be eligible to recover.  Further, the Settlement here offers a significant enhancement to Class Members, providing recovery for those who might not be eligible to receive money from the government settlements, and increasing the total percentage of damages recovered for the Class.

III.     **The Court Should Approve the Proposed Class Notice Plan and A.B. Data, Ltd. as Settlement Administrator**

Due process and Rule 23 require that the class receive adequate notice of a class action settlement.  *Wal-Mart Stores*, 396 F.3d at 114.  The adequacy of a settlement notice is measured

---

[13] *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010) ("Claimants likely have no interest in pursuing their own claims, which may be prohibitively small."); *accord Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007) (finding superiority was satisfied in CEA case where individual claims would likely "cost more to prosecute than may be recovered in damages").

by reasonableness.  *See id.*; *see also* FED. R. CIV. P. 23 (e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.").[14]

The proposed Class Notice plan and related forms of notice (*see* Exs. 2-4) are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The direct-mailing notice component of the notice program will involve sending the mailed notice (Ex. 3) and the Proof of Claim and Release form (*id.*, Ex. 5) via First-Class Mail, postage prepaid to potential Class Members.  *See* Ex. 2 (Declaration of Linda V. Young).  The Supreme Court has consistently found that mailed notice satisfies the requirements of due process.  *See, e.g., Mullane*, 339 U.S. at 319.  The Settlement Administrator also will publish the publication notice in various periodicals, industry publications, and on websites.  *See* Ex. 4. Any Class Members that do not receive the Class Notice via direct mail likely will receive the Class Notice through the foregoing publications or word of mouth.  The Settlement Website, www.treasuryfuturesclassactionsettlement.com, will serve as an information source regarding the Settlement.  Class Members can review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the mailed and publication notices; (iii) the proposed Distribution Plan; (iv) the Settlement Agreement with JPMorgan; and (v) key pleadings and Court orders.  The Settlement Administrator will also operate a toll-free telephone number to answer Class Members' questions and facilitate claims filing.

Interim Co-Lead Class Counsel recommends that A.B. Data, Ltd. be appointed as Settlement Administrator.  A.B. Data developed the Class Notice Plan and has extensive

---

[14] *See also In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988) (due process does not require actual notice to every class member, as long as class counsel "acted reasonably in selecting means likely to inform persons affected").

experience administering complex class action settlements, including in cases involving exchange-traded futures and options on futures contracts.  ¶ 43.

## IV.       The Court Should Appoint Citibank, N.A. As Escrow Agent

Interim Co-Lead Class Counsel have designated Citibank, N.A. ("Citibank") to serve as Escrow Agent, to which JPMorgan has consented.  Citibank has served as escrow agent in a number of CEA settlements, including *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill.) and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, No. 11 Civ. 2613 (S.D.N.Y.).  Citibank has agreed to provide its services at market rates.

## V.        Proposed Schedule of Events

In Appendix A, Class Plaintiffs propose a schedule in connection with preliminary approval of the Settlement, final approval of the Settlement and the Distribution Plan, and Class Plaintiffs' motion for attorneys' fees, expenses, and an application for an Incentive Award.  If the Court agrees, Plaintiffs request that the Court schedule the Fairness Hearing for a date one hundred fifty (150) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing.  The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## CONCLUSION

On the basis of the foregoing, Class Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement with JPMorgan and enter the accompanying Preliminary Approval Order.

Dated: September 22, 2021

**KIRBY McINERNEY LLP**

*/s/ Karen M. Lerner*
Karen M. Lerner
David E. Kovel
Anthony E. Maneiro
250 Park Avenue, Suite 820
New York, NY 10177
Tel.: (212) 371-6600
E-mail: klerner@kmllp.com
E-mail: dkovel@kmllp.com
E-mail: amaneiro@kmllp.com

**LOWEY DANNENBERG, P.C.**

*/s/ Vincent Briganti*
Vincent Briganti
Raymond P. Girnys
Johnathan P. Seredynski
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
E-mail: vbriganti@lowey.com
E-mail: rgirnys@lowey.com
E-mail: jseredynski@lowey.com

*Interim Co-Lead Class Counsel for Plaintiffs and the Proposed Class*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

Anthony F. Fata (*pro hac vice*)
150 S. Wacker, Suite 3000
Chicago, IL 60606
Tel.: (312) 782-4882
E-mail: afata@caffertyclobes.com

**FREED KANNER LONDON & MILLEN LLC**

Steven A. Kanner (*pro hac vice*)
Douglas A. Millen *(pro hac vice)*
Brian M. Hogan (*pro hac vice*)
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: 224-632-4500
E-mail: skanner@fklmlaw.com
E-mail: dmillen@fklmlaw.com
E-mail: bhogan@fklmlaw.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

Christopher M. Burke
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
E-mail: cburke@scott-scott.com

Amanda F. Lawrence
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 531-2645
E-mail: alawrence@scott-scott.com

Louis F. Burke
Thomas K. Boardman
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
E-mail: lburke@scott-scott.com
E-mail: tboardman@scott-scott.com

*Additional Counsel for Plaintiffs and the Proposed Class*

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline for mailing the Postcard Notice to Class Members and posting the Notice and Claim Form on the Settlement Website (the "Notice Date") (Preliminary Approval Order ("PAO") (PAO ¶ 12)) | 45 days after entry of the Preliminary Approval Order |
| Complete initial distribution of mailed notices | 60 days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (PAO ¶ 34) | 60 days prior to the Fairness Hearing |
| Deadline for requesting exclusion and submitting objections (PAO ¶¶ 18, 22) | 45 days prior to the Fairness Hearing |
| Deadline for filing reply papers (PAO ¶ 34) | 5 days prior to the Fairness Hearing |
| Fairness Hearing | 150 days after the Notice Date |
| Deadline for submitting Claim Forms (PAO ¶ 28) | 30 days after the Fairness Hearing |