**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JPMORGAN TREASURY FUTURES SPOOFING LITIGATION | Case No. 1:20 Civ. 03515 |
| | Hon. Paul A. Engelmayer |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**JOINT DECLARATION OF VINCENT BRIGANTI AND KAREN M. LERNER IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, AND J.P. MORGAN FUTURES, INC.**

Pursuant to 28 U.S.C. § 1746, we, Vincent Briganti and Karen M. Lerner, hereby declare as follows:

1.      We are, respectively, partners of the law firms Lowey Dannenberg, P.C. ("Lowey") and Kirby McInerney LLP ("Kirby") (collectively, "Interim Co-Lead Counsel"), Court-appointed Interim Co-Lead Counsel in the above-referenced Action.  *See* ECF No. 37.[1]  Lowey and Kirby have significant experience litigating complex Commodity Exchange Act class actions.

2.      We submit this Joint Declaration in connection with Class Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with JPMorgan Chase & Co., J.P. Morgan Clearing Corp. J.P. Morgan Securities LLC, and J.P. Morgan Futures, Inc. (collectively, "JPMorgan").[2]

3.      Unless otherwise defined herein, all capitalized terms have the same meaning as defined in the Stipulation and Agreement of Settlement with JPMorgan dated September 8, 2021.

4.      Annexed hereto are true and correct copies of the following documents:

| Table of Exhibits | |
|---|---|
| Exhibit 1 | Stipulation and Agreement of Settlement with JPMorgan dated September 8, 2021 (the "Settlement Agreement"). |
| Exhibit 2 | Affidavit of Linda V. Young, dated September 22, 2021. |
| Exhibit 3 | Proposed mailed notice. |
| Exhibit 4 | Proposed publication notice. |
| Exhibit 5 | Proof of Claim and Release form. |
| Exhibit 6 | Proposed Distribution Plan. |
| Exhibit 7 | Lowey's firm resume. |
| Exhibit 8 | Kirby's firm resume. |

---

[1] Unless otherwise noted, all docket citations are to the docket in this Action, 20 Civ. 3515 (PAE) (S.D.N.Y.).

[2] J.P. Morgan Clearing Corp. is now known as J.P. Morgan Securities LLC.  J.P. Morgan Futures, Inc. is now known as J.P. Morgan Securities LLC.

## I.   Procedural History

5.      On May 1, 2020, Plaintiffs Charles Herbert Proctor, III and Synova Asset Management, LLC filed the initial complaint against Defendants in the U.S. District Court for the Northern District of Illinois alleging that Defendants violated the Commodity Exchange Act, 7 U.S.C. §§ 1 *et. seq.* ("CEA"), and the common law by intentionally manipulating the prices of U.S. Treasury futures contracts ("U.S. Treasury Futures") and options on those contracts ("Options on U.S. Treasury Futures") traded on United States-based exchanges, including but not limited to the Chicago Mercantile Exchange ("CME") and its subsidiary the Chicago Board of Trade ("CBOT") from April 1, 2008 through January 31, 2016 (the "Class Period").[3]

6.      Plaintiffs alleged that JPMorgan intentionally manipulated the prices of U.S. Treasury Futures and Options on U.S. Treasury Futures through a technique called "spoofing," which is the intentional placing of orders with the intent to cancel prior to execution to send false and illegitimate supply and demand signals to an otherwise efficient market.  Plaintiffs alleged that JPMorgan caused U.S. Treasury Futures and Options on U.S. Treasury Futures prices to be artificial throughout the Class Period to benefit their trading positions financially, at the expense of other investors.

7.      Subsequently, related actions were filed in the Northern District of Illinois and Southern District of New York.  On October 9, 2020, all actions were ultimately transferred to this District and consolidated into this Action.  *See* ECF No. 37.

8.      On September 29, 2020, JPMorgan entered into a Deferred Prosecution Agreement ("DPA") with the United States Department of Justice Criminal Division, Fraud Section, and the

---

[3] *See Charles Herbert Proctor, III, et al., v. JPMorgan Chase & Co., et al.*, No. 20 Civ. 05360 (S.D.N.Y. May 1, 2020) (transferred from the Northern District of Illinois), ECF No. 1; *see also Charles Herbert Proctor, III, et al., v. JPMorgan Chase & Co., et al.*, No. 20 Civ. 02666 (N.D. Ill. May 1, 2020), ECF No. 1.

United States Attorneys' Office for the District of Connecticut ("USAOC") to resolve criminal charges related to a scheme to defraud market participants in thousands of episodes of unlawful trading in the U.S. Treasury Futures market between at least April 2008 and January 2016.[4]

9.    Under the DPA, JPMorgan paid a total criminal monetary amount of $920,203,609 in connection with the manipulation of, among other things, the U.S. Treasury Futures market. Included in this total amount was $436,431,811 in criminal monetary penalties, $172,034,790 in criminal disgorgement amount, and $311,737,008 as a victim compensation payment amount, to be distributed at the DOJ and USAOC's sole discretion, which will be used to compensate victims of JPMorgan's manipulation of U.S. Treasury Futures and Options on U.S. Treasury Futures, as well as other misconduct covered by the DPA.  Specifically, the DOJ and USAOC will distribute $33,584,906 to compensate victims of JPMorgan's manipulation of U.S. Treasury Futures and Options on U.S. Treasury Futures.

10.    JPMorgan admitted and acknowledged responsibility for the acts charged in the Information and as set forth in the Statement of Facts accompanying the Deferred Prosecution Agreement.

11.    On September 29, 2020, the Commodity Futures Trading Commission ("CFTC") issued an order ("CFTC Order") filing and settling charges against JPMorgan for manipulative and deceptive conduct and spoofing that spanned at least 2008 through 2016 and involved hundreds of thousands of spoof orders in U.S. Treasury Futures and precious metals futures contracts on the

---

[4] Deferred Prosecution Agreement, *U.S. v. JPMorgan Chase & Co.*, No. 3:20 Cr. 00175-RNC (D. Conn. Sep. 29, 2020), ECF No. 2; *see also* Information, *U.S. v. JPMorgan Chase & Co.*, No. 3:20 Cr. 00175-RNC (D. Conn. Sep. 29, 2020), ECF No. 1.

Commodity Exchange, Inc., the New York Mercantile Exchange, and the Chicago Board of Trade.[5]

12.     On October 9, 2020, this Court appointed Lowey and Kirby as Interim Co-Lead Counsel and invested Interim Co-Lead Counsel with both the responsibility and authority to "negotiate with defense counsel with respect to settlement and other matters."  *See* ECF No. 37.

13.     The Parties agreed to mediate shortly thereafter and on December 2, 2020, the Court extended all case deadlines.  *See* ECF No. 52.

14.     On April 2, 2021, Plaintiffs Budo Trading LLC, Thomas Gramatis, Kohl Trading LLC, M & N Trading, L.L.C., Port 22, LLC, Charles Herbert Proctor, III, Robert Charles Class A, L.P., Rock Capital Markets, LLC, and Synova Asset Management, LLC filed a consolidated class action complaint.  *See* ECF No. 57.  Class Plaintiffs are sophisticated investors with significant financial expertise with decades of collective experience trading U.S. Treasury Futures and Options on U.S. Treasury Futures.

15.     Class Plaintiffs' allegations and claims in this Action are based on a thorough investigation conducted by Interim Co-Lead Counsel.  Interim Co-Lead Counsel, *inter alia*, investigated: (1) the U.S. Treasury Futures and U.S. Treasury Securities markets, generally; (2) publicly available press releases, news articles, and other media reports related to regulatory and law enforcement investigations into manipulation of U.S. Treasury Futures; (3) publicly available documents concerning JPMorgan's business practices, formal regulatory investigations and enforcement proceedings, including by the DOJ and CFTC; (4) JPMorgan's SEC filings and other public reports; and (5) consulted with experts and market participants about the foregoing.

---

[5] Order Instituting Proceedings Pursuant to Section 6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In the Matter of JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC*, Commodity Futures Trading Commission, No. 20-69 (Sept. 29, 2020), *available at*: https://www.cftc.gov/media/4826/enfjpmorganchaseorder092920/ download ("CFTC Order").

## II.    Settlement Negotiations

16.    Beginning in October 2020, Plaintiffs and JPMorgan began discussing the possibility of settlement on behalf of the class.  These negotiations included numerous telephonic conferences, emails, and other communications.

17.    On October 26, 2020, the Parties asked the Court to extend all pending deadlines while they established a framework for settlement negotiations and selected a mediator, which relief the Court granted.  *See* ECF Nos. 41, 43.  The Parties agreed to the selection of Jed D. Melnick, Esq. (JAMS) as mediator.  Jed D. Melnick, Esq. is a well-respected and experienced mediator with a track record of successfully helping parties to resolve significant and high-profile disputes, including securities and complex class actions.

18.    Prior to the mediation, Interim Co-Lead Counsel negotiated the exchange by JPMorgan of over 300 gigabytes of U.S. Treasury Futures or Options on U.S. Treasury Futures trade data for JPMorgan transactions, including data for the full duration of the Class Period (the "Mediation Information").  The Mediation Information provided Class Plaintiffs with the ability to assess the scope of JPMorgan's manipulation and its impact on market participants.

19.    On February 9, 2021, the Parties exchanged detailed mediation statements.  On February 16, 2021, the Parties participated in a full day Zoom mediation session with Mr. Melnick that included robust presentations of the Parties' respective litigations risks—including the existence of the government settlements—and presentations of each Party's damages analysis, followed by questions and critiques from the opposing Party.  The mediation session did not result in a settlement.

20.    Following the mediation session, Mr. Melnick continued facilitating discussions between the Parties over the course of the next month.  On March 10, 2021, Mr. Melnick presented

the Parties with a mediator's proposal for a $15,700,000 settlement that also included further exchange of Mediation Information.  Each Party accepted the proposal.

21.    After weeks of additional negotiations, on May 25, 2021, Class Plaintiffs and JPMorgan executed a binding settlement term sheet.  As part of the term sheet, JPMorgan agreed to provide further Mediation Information that included non-privileged chats from various custodians that (a) JPMorgan previously provided to regulators; (b) hit upon relevant search terms used in connection with regulatory productions; (c) hit upon additional search terms relevant to futures contracts and options on futures contracts; and (d) underwent human review on or before June 24, 2021 to allow Class Plaintiffs to confirm, along with Class Plaintiffs' analysis of JPMorgan's trade data, that the proposed settlement amount was reasonably supported.  This production of further Mediation Information included 167,225 documents consisting of 5,841,744 pages and at least 100,000 e-mails and Bloomberg chats throughout the relevant time period. Interim Co-Lead Counsel used the emails and chats to evaluate JPMorgan's disclosures regarding the events revealed in the government settlements and the scope of the alleged misconduct.

22.    Additionally, trade data produced by JPMorgan and procured from public sources allowed Interim Co-Lead Counsel to work with economic experts to examine the number and impact of the alleged manipulative events on the U.S. Treasury Futures and Options on U.S. Treasury Futures markets.  Interim Co-Lead Counsel incorporated this analysis into the proposed Plan of Distribution, as part of the evaluation of the number and impact of the alleged manipulative events on the U.S. Treasury Futures and Options on U.S. Treasury Futures markets.  Interim Co-Lead Class Counsel in consultation with their experts was also able to preliminarily estimate class wide damages of $50 – $60 million, assuming Class Plaintiffs succeed on all triable issues.

23.     On May 26, 2021, Class Plaintiffs and JPMorgan reported to the Court that they had reached an agreement in principle to resolve this Action and requested that the Court stay the case for ninety (90) days to provide the Parties with an opportunity to finalize and file formal settlement documents, which the Court granted.  *See* ECF Nos. 60, 62.  On August 19, 2021, the Court granted Plaintiffs' request to extend the stay thirty (30) days.  *See* ECF No. 65.

24.     The Parties executed the Settlement Agreement on September 8, 2021.  When the Settlement was executed, Interim Co-Lead Counsel and Class Plaintiffs had access to sufficient information to allow them to conclude that the proposed Settlement was fair, reasonable, and adequate.

25.     Negotiations leading to the Settlement were entirely non-collusive and strictly arm's length.  And, as discussed above, prior reaching the Settlement, Class Plaintiffs and Interim Co-Lead Counsel were well-informed regarding the strengths and weaknesses of Class Plaintiffs' claims.  Interim Co-Lead Counsel had the benefit of information from its investigations and analyses, regulatory investigations and settlements involving Defendants.

26.     At all times while negotiating and executing the proposed Settlement with JPMorgan, Class Plaintiffs were represented by Interim Co-Lead Counsel, who have significant experience prosecuting federal class action claims arising under the CEA.  *See* Exhibits 7-8; *See* ECF No. 37 (noting that Interim Co-Lead Counsel have extensive experience in commodities cases and futures manipulation, including "secur[ing] the two largest recoveries ever in CEA cases").  Defendants were represented by Sullivan & Cromwell LLP, a leading international law firm that has significant experience defending federal class action claims arising under the CEA.

## III.    Key Settlement Terms

27.     JPMorgan has agreed to pay $15,700,000 to Class Plaintiffs and the Settlement Class.  The Settlement Class is defined as:

7

All Persons and entities wherever located that transacted in U.S. Treasury Futures or Options on U.S. Treasury Futures on United States-based exchanges, including but not limited to the Chicago Mercantile Exchange ("CME"), including its subsidiary the Chicago Board of Trade ("CBOT"), from April 1, 2008, through January 31, 2016 (the "Settlement Class Period").  Excluded from the Settlement Class are (i) any judicial officer presiding over this Action, and the members of his or her immediate family and judicial staff; (ii) the United States Government; and (iii) the Defendants and any past or present parent, subsidiary, affiliate or division of any Defendant; provided, that any Investment Vehicle shall not be excluded from the Settlement Class, but under no circumstances may JPMorgan (or any of its past or present parents, subsidiaries, affiliates, or divisions) receive a distribution for its own account from the Settlement Fund through an Investment Vehicle.  Also excluded from the Settlement Class is any Person or entity who or which properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with Fed. R. Civ. P. 23(c) and in accordance with the procedure to be established by the Court.

*See* Ex. 1 §1(F).

28.    The consideration that JPMorgan has agreed to pay is within a range that may be found to be fair, reasonable, and adequate at final approval.  The Settlement may also serve to enhance the recovery for Class Members to the extent they are also eligible to receive proceeds from the victim compensation payment amount administered by the DOJ.

29.    The Settlement involves a structure and terms that are common in class action settlements, including a confidential Supplemental Agreement that provides JPMorgan with a qualified right to terminate the Settlement in the event that the volume of U.S. Treasury Futures or Options on U.S. Treasury Futures transacted by Class Members, who timely exercise their right to request exclusion from the Settlement Class, exceeds a certain percentage.  *See* Ex. 1 § 19(D).

30.    Interim Co-Lead Counsel has strong reason to believe that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition.  This belief is based on trading volume data and expert analysis.

31.    Class Members that do not request exclusion from the Settlement Class and submit a valid claim will receive a *pro rata* share of the Net Settlement Fund, based on the volume of their

U.S. Treasury Futures and Options on U.S. Treasury Futures transactions and adjusted by certain multipliers as described in the accompanying Distribution Plan.  *See* Ex. 6 at ¶¶ 6-18.

32.     In the event that the Settlement is terminated pursuant to the terms of the Settlement Agreement, any amount paid by JPMorgan into an Escrow Account, less any reasonable costs incurred for notice and claims administration up to $500,000 will be returned to JPMorgan within 10 business days of termination.  *See* Ex. 1 §§ 4(F), 8(B), 20(A).

33.     If approved, the Settlement provides that "the Releasing Parties shall release and be deemed to have released and forever discharged and shall be forever enjoined from prosecuting the Released Claims against the Released Parties," and the Action will be completely resolved. *See* Ex. 1 § 11.

34.     Interim Co-Lead Counsel intend to seek attorneys' fees of no more than one-third of the common fund created by the Settlement and reimbursement for the costs and expenses incurred in litigating this Action.  *See* Ex. 1 §4(E); Ex. 3 at 17.

35.     Class Plaintiffs may also request Incentive Awards for their efforts in prosecuting this Action as class representatives.  *See* Ex. 1 §4(E); Ex. 3 at 17.

**IV.     Distribution Plan**

36.     Interim Co-Lead Counsel, together with their consulting experts, developed the proposed Distribution Plan.  The Net Settlement Fund will be allocated on a *pro rata* basis according to an estimate of the impact of Defendants' spoofing on market transactions. *See* Exhibit 6.  The Distribution Plan calculates an "Instrument Amount" for each U.S. Treasury Futures or Options on U.S. Treasury Futures transaction.  The Instrument Amount is determined by multiplying together three metrics: the "Volume Multiplier," "Instrument Multiplier," and "Futures Contract Specification Multiplier."

37.     The Volume Multiplier reflects the notional value of each transaction, which is the product of the number of contracts purchased or sold, the futures contract price denominated in index points, and the "Notional Dollar Value per Index Point," or the dollar value for each index point.  The Instrument Multiplier assigns a multiplier value depending on whether the transaction involves a futures contract, call option, or put option.  Finally, the Futures Contract Specification Multiplier accounts for the impact of Defendants' spoofing on U.S. Treasury Futures and Options on U.S. Treasury Futures.

38.     The Instrument Amounts for each transaction will be added together and represent the claimant's Transaction Claim Amount.  Under the Distribution Plan, the Net Settlement Fund will be allocated *pro rata* based on the Transaction Claim Amount.

39.     The exception to this will be Class Members whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim.  These Class Members will receive a Minimum Payment Amount in an amount to be determined after the Claim Forms are reviewed, calibrated to ensure that a minimal portion of the Net Settlement Fund is reallocated toward Authorized Claimants receiving the Minimum Payment Amount.  These Class Members will receive a Minimum Payment Amount of at least $15.00.  After determining the portion of the Net Settlement Fund that will be used to make the Minimum Payment Amounts, the remainder of the Net Settlement Fund will be reallocated *pro rata* among the remaining Class Members.

40.     The Settlement does not bar Class Members from filing a victim impact statement with the DOJ to participate in the DOJ's victim compensation program, created in connection with the DOJ's deferred prosecution agreement with JPMorgan relating to criminal charges for conduct similar to that alleged in this Action.

41.     Interim Co-Lead Counsel recommend the proposed Distribution Plan as fair, reasonable, and adequate to the proposed Settlement Class, having determined it is to be the most fair and efficient manner for distributing funds to the proposed Settlement Class Members.

**V.     Notice Plan**

42.     The proposed settlement administrator, A.B. Data, Ltd. ("A.B. Data"), developed the proposed Notice Plan in coordination with Interim Co-Lead Counsel.  *See* Exhibits 2-5.  A.B. Data was one of several firms that were requested to submit bids pursuant to a request for proposal generated by Interim Co-Lead Counsel.  Based on a review of the proposals, and weighing the experience, institutional knowledge, and price competitiveness, Interim Co-Lead Counsel determined that the selection of A.B. Data was in the best interest of the Settlement Class.

43.     A.B. Data's proposal included a detailed understanding of the instruments and trading volume involved, and the need for a noticing process that included publications and mailing to entities (e.g., brokers).   A.B. Data has extensive experience administering class action settlements and designing notice plans that have been approved in numerous complex class actions, including class actions involving commodities and futures contracts, such as *In re Silver Fixing Antitrust Litigation.*, Nos. 14 MD 02573 (VEC), 14 MC 02573 (VEC) (S.D.N.Y.); *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill.); and *In re LIBOR-Based Financial Instruments Antitrust Litigation.*, No. 11 MD 2262, No. 11 Civ. 2613 (NRB) (S.D.N.Y.).  *See* Exhibit 2.

44.     The Affidavit of Linda V. Young describes the proposed Notice Plan, which is consistent with notice plans that have repeatedly been approved by courts in prior CEA manipulation class action settlements.  *See*, *e.g.*, Aff. of Linda Young, *Boutchard et al., v. Gandhi et al.*, No. 18 Civ. 7041 (JJT) (N.D. Ill. Jan. 29, 2021), ECF No. 125-2 at 14-40; *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041, slip op. (JJT) (N.D. Ill. Mar. 5, 2021), ECF No. 132; Aff. of Eric

J. Miller, *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD) (HBP) (S.D.N.Y. Sept. 27, 2016), ECF No. 684, at 4-5; *Laydon v. Mizuho Bank Ltd. et al.*, No. 12 Civ. 3419, slip op. (S.D.N.Y. Sept. 12, 2017).

45.     Interim Co-Lead Counsel also subpoenaed the CME Group Inc. and obtained, *inter alia*, documents sufficient to show the names and addresses of "Large Traders"[6] in U.S. Treasury Futures on the CBOT during the Class Period along with the CBOT clearing members that cleared U.S. Treasury Futures and Options on U.S. Treasury Futures.  As part of the direct mailing, notice will be sent directly to Large Traders and CME and CBOT clearing members with the direction that such clearing firms should forward the Settlement Class Notice to persons who transacted in U.S. Treasury Futures and Options on U.S. Treasury Futures during the Class Period.

46.     A proposed Proof of Claim and Release form, prepared and recommended by Interim Co-Lead Counsel and A.B. Data, is submitted as Exhibit 5.  Interim Co-Lead Counsel developed the Proof of Claim and Release form with the assistance of A.B. Data to ensure it was written in a fashion that could be readily understood by Class Members.  Interim Co-Lead Counsel recommend the proposed Proof of Claim and Release form as fair and reasonable.

We declare under penalty of perjury that the foregoing is true and correct.


Executed on September 22, 2021          */s/ Vincent Briganti*
White Plains, New York                   Vincent Briganti


Executed on September 22, 2021          */s/ Karen M. Lerner*
New York, New York                       Karen M. Lerner

---

[6] Large traders being defined as those who are required to report under Part 17 of the Commodity Futures Trading Commission's (CFTC) regulations. Current reporting levels are found in CFTC Regulation 15.03(b).