**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JPMORGAN TREASURY FUTURES SPOOFING LITIGATION | Case No.: 1:20 Civ. 03515 |
| | Hon. Paul A. Engelmayer |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, AND J.P. MORGAN FUTURES, INC.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 2

   A.   The Settlement is procedurally fair in light of the exemplary representation
        provided by Class Plaintiffs and Class Counsel and the non-collusive nature of
        settlement negotiations with JPMorgan ........................................................... 3

        1.   Rule 23(e)(2)(A) – Class Plaintiffs Have Adequately Represented the Class ...... 4

        2.   Rule 23(e)(2)(A) – Class Counsel Have Adequately Represented the Class ....... 4

        3.   Rule 23(e)(2)(B) – The Proposed Settlement Was Negotiated at Arm's
             Length ..................................................................................................... 5

   B.   The Proposed Settlement is Substantively Fair ........................................................ 8

        1.   The Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ............. 9

        2.   The Remaining *Grinnell* Factors Further Support Final Approval of the
             Settlement ................................................................................................. 14

             a.   The Reaction of the Settlement Class to the Settlement ............................... 14

             b.   The Stage of the Proceedings and the Amount of Discovery Completed ..... 15

             c.   The Ability of JPMorgan to Withstand Greater Judgment .......................... 15

             d.   The Settlement is Reasonable in Light of the Risks and Potential Range
                  of Recovery ....................................................................................... 16

        3.   The Distribution Plan Provides an Effective and Equitable Method for
             Distributing Relief Satisfying Rule 23(e)(2)(C)(ii) and 23(e)(2)(D) ................. 18

        4.   The Proposed Attorneys' Fee Award Confirms that the Class will Receive
             Substantial Relief from the Settlement .............................................................. 20

        5.   The Settlement Identifies all Relevant Agreements that Impact the
             Adequacy of the Relief ................................................................................... 20

II.  THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ....... 21

III. THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT
     AND SATISFIED DUE PROCESS ............................................................................. 22

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Arenson v. Bd. of Trade of City of Chi.*,
   372 F. Supp. 1349 (N.D. Ill. 1974) ...................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................12

*Belton v. GE Cap. Consumer Lending, Inc.*,
   No. 21 Civ. 9492 (CM), 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ...................7

*Bolivar v. FIT Int'l Grp. Corp.*,
   No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) ..........................13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................3, 9, 14, 17

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)......................5

*Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*,
   310 F.3d 1321 (11th Cir. 2002) .......................................................................11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................3

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)................................................................................4

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................13

*Harry v. Total Gas & Power N. Am., Inc.*,
   889 F.3d 104 (2d Cir. 2018)..............................................................................11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 (JG), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)..................3

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
   No. 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........12, 15

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .................................................................................6

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y 2012)................................................................21

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ......................................................................22

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*,
  405 F. App'x 532 (2d Cir. 2010) ....................................................................4, 11, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020)..................12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................18

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019).........................................................passim

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y 2012) ....................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .....................................................................21

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ...................................................................16

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
  332 F. Supp. 3d 885 (S.D.N.Y. 2018).............................................................10

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................18

*In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*,
  No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) ................................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
  No. 18 Civ. 02830, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021) ....................................23

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.* ")*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .......................................................................21

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................5, 16, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..............................................................13

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................passim

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
 827 F.3d 223 (2d Cir. 2016)...................................................................................................4

*In re PPDAI Grp. Inc. Sec. Litig.*,
 No. 18 Civ. 6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...............................7

*In re Sumitomo Copper Litig.*,
 74 F. Supp. 2d 393 (S.D.N.Y. 1999).....................................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No.,
 07 MD 1827 (N.D. Cal. Sept. 3, 2013) .................................................................................13

*In re Tronox Inc.*,
 No. 14 Civ. 5495, 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ........................................16

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...............................13

*Kelen v. World Fin. Network Nat. Bank*,
 302 F.R.D. 56 (S.D.N.Y. 2014) ..............................................................................................7

*Manley v. Midan Rest. Inc.*,
 No. 14 CIV. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016)..........................15

*Matheson v. T-Bone Rest. LLC*,
 No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ...........................10

*Meredith Corp. v. SESAC LLC*,
 87 F. Supp. 3d 650 (S.D.N.Y. 2015)......................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
 456 U.S. 353 (1982)...............................................................................................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)...............................................................................................................23

*Shapiro v. JPMorgan Chase & Co.*,
 No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).............5, 10

*Viafara v. MCIZ Corp.*,
 No. 12 Civ. 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014).........................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).............................................................................................passim

## **Rules**

FED. R. CIV. P. 23(c) ...............................................................................................................12

FED. R. CIV. P. 23(c)(2)(B) .....................................................................................................22

FED. R. CIV. P. 23(e)(1)(B) .....................................................................................................22

FED. R. CIV. P. 23 advisory committee's note to 2018 amendment..............................................3

FED. R. CIV. P. 23(e)(2)(C) ...........................................................................................9

FED. R. CIV. P. 23(e)(2)(C)(i)...............................................................................9, 14

FED. R. CIV. P. 23(e)(2)(D) ...........................................................................................9

## Other Authorities

WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ..................7

WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ...............19

**INTRODUCTION**

Plaintiffs Charles Herbert Proctor, III, Synova Asset Management, LLC, Robert Charles Class A, L.P., Thomas Gramatis, Budo Trading LLC, Kohl Trading LLC, M & N Trading L.L.C., Port 22 LLC, and Rock Capital Markets LLC (collectively, "Class Plaintiffs"), by and through undersigned Class Counsel,[1] move under Federal Rule of Civil Procedure 23 for final approval of a class action settlement with Defendants JPMorgan Chase & Co., J.P. Morgan Clearing Corp. (now known as J.P. Morgan Securities LLC), J.P. Morgan Securities LLC, and J.P. Morgan Futures, Inc. (now known as J.P. Morgan Securities LLC) (collectively, "Defendant" or "JPMorgan").[2]

The Settlement provides for a $15,700,000 cash payment to eligible Class Members impacted by JPMorgan's alleged manipulation of U.S. Treasury futures contracts ("U.S. Treasury Futures") and options on those contracts ("Options on U.S. Treasury Futures") traded on United States-based exchanges from April 1, 2008 through January 31, 2016 (the "Class Period"). Specifically, Class Plaintiffs alleged that JPMorgan utilized a manipulative technique called "spoofing," which involved purposefully placing U.S. Treasury Futures orders with the intent to cancel prior to execution to send false and illegitimate supply and demand signals to an otherwise efficient market.[3] If finally approved, the Settlement will resolve all claims against JPMorgan.

---

[1] The Court appointed Lowey Dannenberg, P.C. and Kirby McInerney LLP as "Class Counsel." *See* ECF No. 74 at ¶ 4.

[2] All capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement dated September 8, 2021 (the "Settlement Agreement") (ECF No. 69-1). All references to "¶" and "Ex." are to the Joint Declaration of Vincent Briganti and Karen M. Lerner dated April 1, 2022 ("Joint Decl."), unless otherwise noted. Internal case citations and quotation marks are omitted and ECF citations are to the docket, unless otherwise noted.

[3] A detailed description of the factual allegations and procedural history is contained in the Joint Decl., filed contemporaneously herewith. In addition, relevant factual backgrounds are also provided in the various declarations in support of Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, filed contemporaneously herewith.

In granting preliminary approval of the Settlement, the Court found that it would likely be able to approve the Settlement under Rule 23(e)(2).  The reaction of the Class to the Settlement since Class Notice was issued only further supports the bases for finally approving the Settlement.  Since the notice period began on January 10, 2022, the Postcard Notice has been mailed directly to more than 27,964 potential Class Members, and there have been more than 27,365 visits to the Settlement Website, which hosts the Class Notice, Proof of Claim and Release form ("Claim Form"), and other information about this Action.  While there are still a few weeks until the objection and opt-out deadlines, to date, there are no objections and no Class Members have requested exclusion from the Settlement.  This is a positive indication from the Class that the Settlement is a favorable resolution of the Class's claims.  For the reasons detailed below and previously in Class Plaintiffs' memorandum in support of their motion for preliminary approval (ECF No. 68) ("Prelim. Approval Mem."),[4] Class Plaintiffs respectfully request that the Court finally approve the Settlement and the Distribution Plan, certify the Settlement Class, and enter the proposed Final Approval Order and Final Judgment dismissing with prejudice the claims against JPMorgan.

## ARGUMENT

### I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005). In service of "the strong judicial policy in favor of settlements, particularly in the class action context," *id.*, a court may approve a class action settlement upon a showing that the settlement is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  A settlement is fair, reasonable, and adequate and should be approved if the settlement is shown to be both procedurally and

---

[4] Class Plaintiffs incorporate by reference the arguments made in their memorandum in support of their motion for preliminary approval, which similarly support this motion for final approval.

substantively fair.  *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing Rule 23(e)(2) standards to be applied at both preliminary and final approval); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

Rule 23 sets out a number of factors to guide the Court's analysis, with the factors in Rule 23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement and those in Rule 23(e)(2)(C) and (D) focusing on substantive fairness.  *See* FED. R. CIV. P. 23 advisory committee's note to 2018 amendment (stating Rule 23 now focuses on the "core concerns of procedure and substance" to be considered when deciding whether to finally approve a settlement).  The courts in this Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to assess the fairness of a class settlement. Applying the *Grinnell* factors and Rule 23 to the Settlement here demonstrates final approval of the Settlement is warranted.

**A.    The Settlement is procedurally fair in light of the exemplary representation provided by Class Plaintiffs and Class Counsel and the non-collusive nature of settlement negotiations with JPMorgan**

To approve a class action settlement, Rule 23 requires the Court to find that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]"  FED. R. CIV. P. 23(e)(2)(A)-(B).  Courts presume a settlement is procedurally fair when it is "the product of arm's length negotiations between experienced and able counsel on all sides."  *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-md-1775 (JG), 2009 WL 3077396, at *7 (E.D.N.Y. Sept. 25, 2009).

1. **Rule 23(e)(2)(A) – Class Plaintiffs Have Adequately Represented the Class**

Class Plaintiffs' identical and related interests to the Class provide clear evidence of their adequacy to represent the Class.  Adequacy of representation is assessed independently of the fairness of the settlement itself and looks to "whether the interests that were served by the settlement were compatible with" those of all settlement class members.  *Wal-Mart*, 396 F.3d at 110; *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (the focus for adequacy is whether the interests of the proposed settlement class are "sufficiently cohesive to warrant adjudication.").  Class Plaintiffs here suffered the same alleged injury as other Class Members, monetary losses resulting from U.S. Treasury Futures and Options on U.S. Treasury Futures traded on United States-based exchanges that were impacted by JPMorgan's alleged manipulation of the market.  The Class, including Class Plaintiffs, allegedly paid artificial prices for U.S. Treasury Futures and Options on U.S. Treasury Futures, and therefore all Class Members have "an interest in vigorously pursuing the claims of the class" to recover those losses.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

2. **Rule 23(e)(2)(A) – Class Counsel Have Adequately Represented the Class**

Courts evaluating adequacy of representation also consider the adequacy of plaintiffs' counsel.  *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation").  In appointing Lowey Dannenberg, P.C. and Kirby McInerney LLP as Class Counsel, the Court has already made an initial determination of counsel's adequacy.  ECF No. 74, ¶ 15; *see* 2018 Advisory Note (interim appointment entails an evaluation of counsel's adequacy to represent the class).  Class Counsel's extensive class action, commodities manipulation, antitrust, and complex litigation experience provides strong evidence that the Settlement is procedurally fair.  *See In re*

*Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting the "extensive" experience of counsel in granting final approval of settlement); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair).

This wealth of experience proved valuable to Class Counsel's efforts to investigate and develop what was the first-filed class action complaint to prosecute JPMorgan for spoofing in U.S. Treasury Futures market.  Joint Decl. ¶¶ 15-16, 40.  As well as being personally well-versed in the relevant facts and law as applied to this Action, Class Counsel utilized the work and expertise provided by Scott + Scott Attorneys at Law LLP, Cafferty Clobes Meriwether & Sprengel LLP, and Freed Kanner London & Millen LLC, which brought their substantial collective experience in complex class actions to bear as Supporting Counsel in the Action.  Class Counsel and Supporting Counsel understood the potential strengths and risks of Class Plaintiffs' claims and developed a comprehensive strategy to obtain a favorable outcome for the Class.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014) (crediting the adequacy of counsel that "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had a clear view of the strengths and weaknesses of their case and of the range of possible outcomes at trial").

### 3.     Rule 23(e)(2)(B) – The Proposed Settlement Was Negotiated at Arm's Length

The Rule 23(e) procedural fairness inquiry is consistent with Second Circuit precedent that attaches "a strong initial presumption of fairness [to a] proposed settlement," when the "integrity of the arm's length negotiation process is preserved . . . ."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see*

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (where a settlement is the "product of arms-length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness").

To assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019). In this case, Class Counsel's expertise and knowledge of the Action supports a finding that the settlement process was fair. As noted in Class Plaintiffs' memorandum in support of preliminary approval of the Settlement, prior to engaging in settlement discussions with JPMorgan, Class Counsel investigated the market for U.S. Treasury Futures and Options on U.S. Treasury Futures. Class Counsel also analyzed JPMorgan's Deferred Prosecution Agreement ("DPA") with the Department of Justice Criminal Division, Fraud Section ("DOJ"), and the United States Attorneys' Office for the District of Connecticut ("USAOC"), including the facts underlying the criminal charges alleged relating to JPMorgan's alleged spoofing scheme in the U.S. Treasury Futures market during the Class Period, as well as the Commodity Futures Trading Commission's ("CFTC") Order settling related charges. *See* Prelim. Approval Mem. at 2; *see also* Joint Decl. ¶¶ 18-21, 26.

In addition, Plaintiffs' Counsel developed their understanding of the case and potential claims through their (1) investigation of the U.S. Treasury Futures and U.S. Treasury Securities markets generally; (2) review of publicly available press releases, news articles, and other media reports related to regulatory and law enforcement investigations into manipulation of U.S. Treasury Futures; (3) examination of publicly available documents concerning JPMorgan's business practices, formal regulatory investigations and enforcement proceedings,

including by the DOJ and CFTC; (4) analysis of JPMorgan's SEC filings and other public reports; and (5) consultations with experts and market participants about the foregoing.  Joint Decl. ¶¶ 18-21, 26.  Class Counsel continued its investigation and research into these alleged claims after its appointment as interim co-lead class counsel, work that culminated into the preparation and filing of the comprehensive consolidated class action complaint on April 2, 2021.  *Id.*, ¶¶ 24-25.  *Belton v. GE Cap. Consumer Lending, Inc.*, No. 21 Civ. 9492 (CM), 2022 WL 407404, at *3 (S.D.N.Y. Feb. 10, 2022) (granting final approval where class counsel conducted a "thorough pre-suit investigation and evaluation of the relevant claims and defenses."); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18 Civ. 6716 (TAM), 2022 WL 198491, at *10 (E.D.N.Y. Jan. 21, 2022) (finding counsel had sufficient information concerning the strengths and weaknesses of the claims, despite lack of formal discovery).

The Parties' meaningful and productive discussions of their views on the case and the key settlement terms, including the amount of consideration to be paid, further confirm that the settlement process utilized here was fair and reasonable.  Joint Decl. ¶¶ 27-36.  Arm's length settlement negotiations with JPMorgan began in earnest in October 2020, and consisted of a series of meetings, telephonic conferences, correspondence, and an extensive day-long formal mediation in the presence of a respected and experienced mediator.  *Id*.  Mediator Jed D. Melnick provided significant assistance over the course of several months to help the Parties reach a resolution of this dispute.  *Id*. ¶¶ 33-34.  *See Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (the involvement of an experienced and qualified mediator in settlement negotiations further affirms the fairness of the process); *Belton*, 2022 WL 407404, at *4 (mediation session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also* WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps

assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator").

Critically, as part of the mediation process, Class Counsel negotiated the exchange of over 300 gigabytes of JPMorgan's transaction data to aid in Class Counsel's understanding of the nature and scope of the alleged spoofing scheme.  Joint Decl. ¶ 30.  The Parties also exchanged detailed mediation statements which included their damages analyses.  *Id*. ¶ 33. After initially reaching an impasse, the work done during the mediation process eventually proved successful, as the Parties remained engaged and ultimately accepted the mediator's settlement proposal.  *Id*. ¶ 34.  As part of the binding term sheet, Class Plaintiff's also negotiated the production by JPMorgan of nearly six million pages of additional information to evaluate JPMorgan's disclosures regarding events revealed in its settlements with government regulators.  *Id*. ¶ 36.

At all times, Class Counsel was fully informed about the facts, risks, and challenges of the Action and had a sufficient basis on which to recommend Class Plaintiffs enter into the Settlement. Class Counsel's conclusion that the Settlement is fair and reasonable weighs in favor of finding the Settlement is procedurally fair and should be approved. *See In re NASDAQ Market-Makers Antitrust Litig. ("NASDAQ III")*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

### B.     The Proposed Settlement is Substantively Fair

To assess the Settlement's substantive fairness, the Court considers whether, "the relief provided for the class is adequate," accounting for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement

required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

Courts in this Circuit have long considered the nine *Grinnell* factors in deciding whether a settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. The amended Rule 23(e)(2) factors are intended to complement the *Grinnell* factors. *See GSE Bonds*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."); *accord Payment Card*, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors . . . ."). Here, the factors set forth in Rule 23(e) and *Grinnell* weigh heavily in favor of final approval.

### 1. The Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36. This factor "implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.*; *see also GSE Bonds*, 414 F. Supp. 3d at 693. In

evaluating this factor, the Court's role is to "balance the benefits afforded the Class [from the settlement], including immediacy and certainty of recovery, against the continuing risks of litigation." *GSE Bonds,* 414 F. Supp. 3d at 694; *see also JPMorgan*, 2014 WL 1224666, at *10 (at final approval, the Court's role is not to "decide the merits of the case or resolve unsettled legal questions or to foresee with absolute certainty the outcome of the case" but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement.").

"[T]he primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Matheson v. T-Bone Rest. LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011). Although Class Plaintiffs and Class Counsel firmly believe that the asserted claims are meritorious and would ultimately prevail at trial, there are risks that come with continuing this Action, and the existence of those risks supports approving the Settlement.

The factual and legal issues in this Action are complex and expensive to litigate. CEA cases are among the most complicated and risky class actions to pursue. *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The case involves claims of commodity price manipulation in violation of the CEA. Such claims have been notoriously difficult to prove . . . ."); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355–56 (1982) ("The [CEA] has been aptly characterized as a comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex'"); *Arenson v. Bd. of Trade of City of Chi.*, 372 F. Supp. 1349, 1352 (N.D. Ill. 1974) ("It would be difficult to imagine litigation presenting issues of greater subtlety and complexity" than those involving commodity futures markets).

Spoofing cases brought under the CEA require a significant expenditure of time and resources, and this case is no exception. *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 910 (S.D.N.Y. 2018) (noting how "exceedingly difficult" it would be to

establish damage in a CEA "spoofing case"). The litigation risks faced by Class Plaintiffs are amplified by the complexity of the market for U.S. Treasury Futures and Options on U.S. Treasury Futures. *See, e.g., Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002) (noting that options on futures contracts are "highly complex and inherently risky financial instruments"). Even where the DOJ or CFTC has settled with defendants, private suits can still fail – especially when damages are contested. *Compare* Order Instituting Proceeding Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, *In the Matter of: Total Gas & Power N. Am., Inc. and Therese Tran*, CFTC Docket No. 16-03 (Dec. 7, 2015) (fining respondent $3.6 million for manipulating natural gas prices), *with Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 114 (2d Cir. 2018) ("Plaintiffs have failed to provide facts sufficient to allege a plausible connection between their trading and [defendant's conduct].").

To manage the litigation risks, Class Counsel obtained detailed expert analyses of U.S. Treasury Futures and Options on U.S. Treasury Futures prices, sifted through transaction data, consulted industry insiders, and examined relevant reports and public disclosures to develop the particular knowledge and expertise concerning the facts, circumstances and claims necessary to skillfully prosecute this Action. *See, e.g.,* Joint Decl. ¶¶ 13-14, 26, 30-31, 36. The intricate nature of the financial products and the market, and the sophistication of the alleged manipulation, which transpired over several years, exemplify the difficulty and uncertainty of pursuing these claims. *See Currency Conversion Fee*, 263 F.R.D. at 123 ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty").

Informed by Class Counsel's extensive investigation, Class Plaintiffs developed a comprehensive consolidated complaint that likely would have withstood any motion to dismiss. Nonetheless, the possibility remained that the Court could dismiss Class Plaintiffs' claims. *See, e.g., In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*, No. 19 Civ. 6002

(LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) (dismissing CEA spoofing claims pursuant to Rule 12(b)(6)), *appeal docketed,* No. 21-853 (2d Cir. April 2, 2021).  Had this Action proceeded past the pleading stage, the litigation risks would only increase as Class Plaintiffs still had to prevail in certifying a class, overcome any summary judgment motion, and prove liability and damages at trial.  *See, e.g.*, *GSE Bonds*, 414 F. Supp. 3d at 694 (noting that "there is no guarantee that plaintiffs will be able to prove liability" after the parties have the opportunity to further develop the case through discovery).  Discovery would likely be lengthy and costly, given the sophisticated nature of the alleged manipulation and complexity of the financial data.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[P]roceeding to [ ] discovery can be expensive.").  In addition to fact discovery, experts would be required by both Parties, which would undoubtedly lead to additional depositions and motions *in limine*, further raising the cost to litigate the action.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (experts "tend[] to increase both the cost and duration of litigation").

While Class Plaintiffs are confident the Court would certify a litigation class, JPMorgan would have vigorously opposed the motion.  *See In re GSE Bonds,* 414 F. Supp. 3d at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"); *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.").  Even if the Court certified a litigation class, that certification could be challenged on appeal, or at another stage in the litigation.  *See Currency Conversion Fee*, 263 F.R.D.at 123  ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty"); FED. R. CIV. P. 23(c) (authorizing a court to decertify a class at any time).  The losing party

would have undoubtedly sought interlocutory review, thus further extending the timeline of the litigation and increasing expenses. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement."). Further, Class Plaintiffs would continue to bear the risk of maintaining the class through trial.

It is likely that this case would have been litigated for years as the Parties vigorously contested liability and damages. Indeed, JPMorgan has denied, and continues to deny, any liability to Class Plaintiffs. Consequently, at trial, Class Plaintiffs would face the challenge of proving liability and class damages to a jury. *See, e.g., Bolivar v. FIT Int'l Grp. Corp.*, No. 12 Civ. 0781 (PGG), 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019) ("it is Plaintiffs who bear the burden of establishing their claimed damages to a reasonable certainty" in relation to a class action alleging CEA violations among other claims). The Parties would engage in a "battle of the experts" to prove or disprove damages. *NASDAQ III*, 187 F.R.D. at 476; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."). At trial, both sides would have offered expert testimony, and there is a substantial risk that a jury might accept one or more of JPMorgan's damages arguments and award far less than the $15,700,000 secured by the Settlement, or even nothing at all.

Even where the government has secured a criminal guilty plea, civil juries have found no damages. *See*, *e.g.*, Special Verdict on Indirect Purchases*, In re TFT-LCD (Flat Panel)*

13

*Antitrust Litig.*, No. 07 MD 1827 (N.D. Cal. Sept. 3, 2013), ECF No. 8562.  Thus, there is a substantial risk that a jury might accept one or more of JPMorgan's damage arguments and award nothing at all or award less than the $15,700,000 that, if approved, would be available to the Settlement Class.  Even if Class Plaintiffs "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years if at all." *In re GSE Bonds*, 414 F. Supp. 3d at 693.

Accordingly, each of these risks weighs in favor of final approval and underscore the reasonable of the Settlement.

### 2. The Remaining *Grinnell* Factors Further Support Final Approval of the Settlement

The *Grinnell* factors not expressly included in Rule 23(e)(2)(c)(i) are also instructive to the Court in assessing whether the relief provided to the class is adequate.  These factors include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

#### a. The Reaction of the Settlement Class to the Settlement

While Class Members continue to have an opportunity to file a claim, object, or opt out of the Settlement, the Settlement Class's reaction so far indicates that they favor approval of the Settlement.  *See Wal-Mart*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'").  To date, no objections have been filed, and no requests for exclusion has been received, while more than 27,964 Postcard Notices have been sent to potential Class Members.  *See* Declaration of Jack Ewashko dated March 31, 2022 ("Ewashko Decl."), ¶¶ 12, 25, 27.  The Claims

Administrator will submit an updated report following the April 18, 2022, objection and exclusion deadline.

> **b.    The Stage of the Proceedings and the Amount of Discovery Completed**

The Court's primary task in examining these factors is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their case, and whether the settlement is adequate given those risks. *AOL Time Warner*, 2006 WL 903236, at *10. This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[class counsel] have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *Id*.

That inquiry is satisfied here. As described in the papers submitted with this motion and in Class Plaintiffs' preliminary approval motion, Class Counsel conducted extensive factual and legal research and consulted with experts to assess the validity of Class Plaintiffs' claims. *See, e.g.*, Prelim. Approval Mem. at 14; ECF No. 68; Joint Decl. ¶¶ 14, 24, 26, 31. Additionally, as a key requirement of the mediation and settlement process, Class Plaintiffs received Mediation Information that solidified Class Plaintiffs' understanding of the relative risks of continued litigation. *Id*. 30. As a result, Class Plaintiffs had more than sufficient information by which to assess the Settlement and to find that is fair, reasonable, and adequate given the strengths and challenges of the Action. *See Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016) (settlement fair, reasonable, and adequate where "Plaintiffs' counsel interviewed plaintiffs, the parties have exchanged informal discovery and plaintiffs' counsel has analyzed defendants' records to calculate the damages").

> **c.    The Ability of JPMorgan to Withstand Greater Judgment**

Here, the financial obligation the Settlement imposes on JPMorgan, coupled with the regulatory penalties, are substantial. While there is little reason to doubt that JPMorgan could

withstand a greater judgment than the amount paid in settlement, "'fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement.'" *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018); *see also Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair); *In re Tronox Inc.*, No. 14 Civ. 5495 (KBF), 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved—indeed, if it did, it is hard to imagine why a defendant would ever settle a case."). As such, JPMorgan's ability to withstand a greater judgment does not undermine the reasonableness or adequacy of the Settlement. *See LIBOR*, 327 F.R.D. at 495 (stating that "this factor is intended to 'strongly favor settlement' when 'there is a risk that an insolvent defendant could not withstand a greater judgment' but that 'the ability of defendants to pay more, on its own, does not render the settlement unfair'").

> **d.    The Settlement is Reasonable in Light of the Risks and Potential Range of Recovery**

Courts often examine together the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. *See Payment Card*, 330 F.R.D. at 47-48; *PaineWebber*, 171 F.R.D. at 130 ("[t]he adequacy of the amount offered in settlement must be judged 'not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiffs' case.'"). In considering these factors, "'the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness.'" *LIBOR*, 327 F.R.D. at 495 (approving settlements even where the plaintiffs did not provide damages estimate). The analysis of these factors requires consideration of "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119. As

the Second Circuit has explained, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 n.3.

As discussed in Class Plaintiffs' preliminary approval motion, Class Counsel believes the Settlement, which provides $15,700,000 less any authorized fees, costs, and expenses, is an excellent result that offers immediate relief to the Settlement Class. *See* Prelim. Approval Mem. at 13–14. Class Plaintiffs' experts have estimated class wide damages between $50 to $60 million, assuming Class Plaintiffs succeed on all triable issues. *Id.* at 14. The Settlement recovery is roughly 26.2% – 31.4% of estimated class wide damages. *Id*.; *see, e.g.*, *Payment Card*, 330 F.R.D. at 49 (approving settlement in which the settlement amount represented "may be only several months of interchange fees").

Evaluating the Settlement Amount against the recovery the DOJ and USAOC received further demonstrates its reasonableness. *See* Joint Decl. ¶¶ 18-21 (describing government settlements); *see* also Prelim. Approval Mem. at 14 (noting that "the DOJ and USAOC estimated that JPMorgan's spoofing caused at least $33,584,906 in losses to participants in the U.S. Treasury Futures market. DPA, ¶¶ 7, 15 & Ex. A ¶ 75."). Class Plaintiffs respectfully submit that JPMorgan's spoofing of U.S. Treasury Futures caused greater losses, and as a result of Class Plaintiffs' and Class Counsel's efforts, the total sum available for compensation to harmed market participants has been increased by almost 50%. While some Class Members may be eligible to receive proceeds under the government's victim compensation fund, it is unclear to Class Plaintiffs if all Class Members may be eligible to recover. The Settlement provides a significant enhancement to Class Members, providing recovery for those who might not be eligible to receive money from the victim compensation payment amount, and increasing the total percentage of damages recovered for the Class.

In exchange for the Settlement Amount, the Releasing Parties will release the Released Parties from claims that arise out of or relate in any way to the acts, facts, statements, or omissions that were or could have been alleged or asserted in this Action.  *See* ECF No. 69-1 § 11.  The claims asserted against JPMorgan in the Action will be dismissed with prejudice on the merits, and any other related claims will be barred by the Settlement's release.

The Settlement's consideration is well within the range of that which may be found to be fair, reasonable, and adequate.

### 3. The Distribution Plan Provides an Effective and Equitable Method for Distributing Relief Satisfying Rule 23(e)(2)(C)(ii) and 23(e)(2)(D)

A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Payment Card*, 330 F.R.D. at 20.  Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y 2012).  A plan of allocation, however, need not be tailored to fit each and every class member with "mathematical precision."  *PaineWebber*, 171 F.R.D. at 133.  In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same).

As detailed in Class Plaintiffs' preliminary approval motion, Class Counsel consulted with financial experts who developed the proposed Distribution Plan.  *See* Prelim. Approval Mem. at 15.  The Distribution Plan allocates the Net Settlement Fund *pro rata* to Authorized Claimants based on an estimate of the impact of JPMorgan's alleged spoofing on market

transactions.[5]  If all other factors are held constant, claimants with a higher trading volume can expect a proportionally larger allocation.  While volume is a core part of the distribution framework, the Distribution Plan also incorporates the impact of JPMorgan's alleged spoofing during the Class Period by incorporating the Futures Contract Specification Multiplier, which accounts for the frequency and the impact of JPMorgan's spoofing on U.S. Treasury Futures and Options on U.S. Treasury Futures.

This method for distributing the Settlement has been finally approved for use in similar cases and is recommended by Class Counsel.  *See* Order Approving Class Notice Plan, *In re London Silver Fixing Antitrust Litig.*, Nos. 14-MD-02573 9VEC) (S.D.N.Y Aug. 5, 2020.), ECF No. 464; Order Preliminarily Approving Class Action Settlement, *Boutchard v. Gandhi et al.*, No. 18 Civ. 7041 (N.D. Ill. Mar. 5, 2021), ECF No. 132.  The proposed Distribution Plan is structured to be efficient to administer and simple for Class Members, thus incentivizing participation.  *See* WILLIAM B. RUBENSTEIN, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible").

As detailed in Class Plaintiffs' Motion for Preliminary Approval, to receive a portion of the Net Settlement Fund, Class Members will be required to submit a Claim Form.  The Claim Form is straight-forward and simple, only requiring a claimant to provide certain background information and readily accessible information about their U.S. Treasury Futures and Options on U.S. Treasury Futures transactions, including the contract traded, trade date, volume, trade price, the option type, strike price, and premium (if applicable).  *See* Prelim. Approval Mem. at 15.  Class Counsel believes that the Distribution Plan is fair and reasonable, and respectfully submits that it should be approved by the Court.

---

[5] Class Members whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim will receive a minimum payment of $15.00.

4.      **The Proposed Attorneys' Fee Award Confirms that the Class will Receive Substantial Relief from the Settlement**

The attorneys' fees and expenses that will be sought in connection with the Settlement are reasonable and ensure the Settlement Class is provided with substantial relief in the form of the Net Settlement Funds.  Consistent with the Class Notice, Class Counsel seek one-third of the Settlement Fund less any Court-awarded litigation expenses and costs and Incentive Awards (or $5,117,163.68) on behalf of all Plaintiffs' Counsel, to be paid, if approved by the Court, upon final approval of the Settlement.  *See* Ewashko Decl., Ex. A at ¶ 27 (disclosing to the Class that counsel would seek up to one-third of the Settlement Amount, or $5,233,333.33). As more fully described in the accompanying Class Counsel's Motion for Award of Attorneys' Fees and Payment of Expenses, the percentage of attorneys' fees requested is reasonable given the range of settlement awards made in similar cases in this District and the amount of work contributed by Plaintiffs' Counsel towards the prosecution of the Action.  In addition to the request for attorneys' fees, Class Counsel seek an award, on behalf of all Plaintiffs' Counsel, of $303,508.96 (or 1.9% of the Settlement Fund) for unreimbursed litigation costs and expenses incurred.  *See Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonably incurred expenses may be reimbursed from the settlement fund).  The expenses are of the type reasonably incurred in class action litigation.

5.      **The Settlement Identifies all Relevant Agreements that Impact the Adequacy of the Relief**

The Settlement fully describes the relief to which Class Members are entitled and all agreements that may impact the Settlement.  This includes disclosing the existence of a Supplemental Agreement that grants JPMorgan a qualified right to terminate the Settlement. *See* ECF No. 69-1 § 19(d).  This type of agreement, often referred to as a "blow" provision, is common in class action settlements.  *See, e.g.*, *GSE Bonds,* 414 F. Supp. 3d at 696 (finding, after review that a similar blow provision "has no bearing on the [settlement] approval

analysis"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02 Civ. 1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (final approval granted noting disclosure of supplemental agreement containing blow provision). Therefore, the Supplemental Agreement does not weigh against approval.

## II.   THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

When the Court preliminarily approved the Settlement, it found that the applicable provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure[6] have been satisfied and the Court would likely be able to approve the Settlement and certify the Settlement Class. *See* ECF No. 74, ¶ 3. There have been no changes that would undermine this Court's initial determination that certification of the Settlement Class is appropriate pursuant to Rule 23(a) and 23(b)(3). *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

For the same reasons previously argued, the Court should grant final certification of the Class for purposes of the Settlement. *See* Prelim. Approval Mem. at 19–23; Bolstering Class Plaintiffs' earlier arguments in support of certification of the Settlement Class is the fact that over 27,964 Postcard Notices were mailed to potential Class Members. *See* Ewashko Decl. ¶¶ 9-12. The size of the potential Class satisfies the numerosity requirement under Rule 23(a). *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("Sufficient numerosity can be presumed at a level of forty members or more."). Further, the size of the

---

[6] Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

Class also supports the superiority of pursuing the claims through a class action.  *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004) (class action is "the superior method for the fair and efficient adjudication of the controversy" where the class is numerous).  In light of the Court's earlier findings and the size of the Settlement Class, Class Plaintiffs respectfully request that this Court finally certify the Settlement Class.

## III.   THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT AND SATISFIED DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]."  FED. R. CIV. P. 23(e)(1)(B).  The standard for the adequacy of notice to the class is reasonableness.  FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.").  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114.  The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

The Class Notice plan has been implemented.  *See generally* Ewashko Decl.  A.B. Data has produced and mailed more than 27,964 copies of the Postcard Notice to potential Class Members using contact information for CME and CBOT clearing members that cleared U.S. Treasury Futures and Options on U.S. Treasury Futures (with the direction that such clearing firms should forward the Settlement Class Notice to persons who transacted in U.S. Treasury Futures and Options on U.S. Treasury Futures during the Class Period); "large traders" in U.S. Treasury Futures on the CBOT during the Settlement Class Period whose names and addresses

have been identified by a subpoena to the CME Group, Inc.; and A.B. Data's proprietary list of banks, brokers and other investors. *See* Ewashko Decl. ¶¶ 5-8.  The publication notice was printed as a press release via *PR Newswire*, which is distributed to more than 10,000 newsrooms and digital websites across the United States, and published in the print editions of *Investor's Business Daily* and *The Wall Street Journal*, and placed as conspicuous banner advertisements on targeted websites directing potential Class Members to the Settlement Website www.treasuryfuturesclassactionsettlement.com. *Id*. ¶¶ 13-17.  This resulted in 56 million impressions among the target audience. *Id*. ¶ 16.

The Class Notice plan, as well as the mailed notice and publication notice, satisfy due process. *See, e.g., In re Mexican Gov't Bonds Antitrust Litig.*, No. 18 Civ. 02830 (JPO), 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process").   The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 319 (1950).  The mailed notice and publication notice are written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart*, 396 F.3d at 114.  Class Members have been advised on the nature of the Action, including the relevant claims, issues, and defenses.  *See* Ewashko Decl. Ex. A (Postcard Notice); Ex. B (Notice Packet).  Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court.  Further, the Class Notice fully advised Class Members of the binding effect of the judgment on them.  *Id.*, Exs. A and B.

The Court should find that the Class Notice plan as implemented was reasonable and satisfied due process.

## CONCLUSION

For foregoing reasons, Class Plaintiffs respectfully request that the Court finally approve the Settlement and the Distribution Plan, certify the Settlement Class, and enter the proposed Final Approval Order and Final Judgment dismissing with prejudice the claims against JPMorgan.

Dated: April 1, 2022                                     Respectfully submitted,

**KIRBY McINERNEY LLP**                    **LOWEY DANNENBERG, P.C.**

*/s/ Karen M. Lerner*                                   */s/ Vincent Briganti*
Karen M. Lerner                                         Vincent Briganti
David E. Kovel                                          Raymond P. Girnys
250 Park Avenue, Suite 820                              Johnathan P. Seredynski
New York, NY 10177                                      44 South Broadway, Suite 1100
Tel.: (212) 371-6600                                    White Plains, NY 10601
E-mail: klerner@kmllp.com                               Tel.: (914) 997-0500
E-mail: dkovel@kmllp.com                                E-mail: vbriganti@lowey.com
                                                        E-mail: rgirnys@lowey.com
Anthony F. Fata                                         E-mail: jseredynski@lowey.com
Anthony E. Maneiro
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Tel.: (312) 767-5180
E-mail: afata@kmllp.com
E-mail: amaneiro@kmllp.com

*Class Counsel for Class Plaintiffs and the Proposed Class*

**CAFFERTY CLOBES**                          **SCOTT+SCOTT ATTORNEYS**
  **MERIWETHER & SPRENGEL LLP**                **AT LAW LLP**
Jennifer Sprengel (*pro hac vice*)            Christopher M. Burke
150 S. Wacker,                                600 W. Broadway, Suite 3300
Suite 3000                                    San Diego, CA 92101
Chicago, IL 60606                             Tel.: (619) 233-4565
Tel.: (312) 782-4882                          E-mail: cburke@scott-scott.com
E-mail: jsprengel@caffertyclobes.com
                                              Amanda F. Lawrence
                                              156 South Main Street
                                              P.O. Box 192
                                              Colchester, CT 06415
                                              Telephone: (860) 531-2645
                                              E-mail: alawrence@scott-scott.com

**FREED KANNER LONDON**
      **& MILLEN LLC**
Steven A. Kanner (*pro hac vice*)
Douglas A. Millen (*pro hac vice*)
Brian M. Hogan (*pro hac vice*)
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel.: 224-632-4500
E-mail: skanner@fklmlaw.com
E-mail: dmillen@fklmlaw.com
E-mail: bhogan@fklmlaw.com

Louis F. Burke
Thomas K. Boardman
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-4478
E-mail: lburke@scott-scott.com
E-mail: tboardman@scott-scott.com

*Supporting Counsel for Class Plaintiffs and the Proposed Class*