# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE JPMORGAN TREASURY FUTURES SPOOFING LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 1:20 Civ. 03515<br><br>Hon. Paul A. Engelmayer |

**<u>DISTRIBUTION PLAN</u>**

## ADMINISTRATIVE PROCEDURES

1. Subject to Court approval, the proceeds of the Net Settlement Fund will be paid to Authorized Claimants who or which submit valid Proof of Claim and Release forms ("Claim Forms") by the claims filing deadline set by the Court ("Claims Deadline"). This section discusses the administrative procedures that will apply to determine eligibility.

2. Each Settling Class Member that wishes to receive proceeds from the Net Settlement Fund must submit a Claim Form to provide pertinent information that will be used to determine his/her/its eligibility to receive a distribution from the Net Settlement Fund. Settling Class Members will also be asked to provide such data, documents, and other proof as may be required by the Settlement Administrator to verify the U.S. Treasury Futures and Options on U.S. Treasury Futures transactions identified on the Claim Form. Each Claim Form is signed under the penalty of perjury.

3. Following receipt of each Claim Form, the Settlement Administrator will issue a confirmation receipt to the Claimant.

4. The Settlement Administrator will review each Claim Form to determine whether the Claimant is a Settling Class Member. Claims submitted by Claimants who or which are not Settling Class Members will be rejected.

5. The Settlement Administrator will review each Claim Form to determine whether the Claim Form is submitted in accordance with the Settlement and Orders of the Court. Claims that are not submitted in accordance with the Settlement and Orders of the Court will be rejected.

## CALCULATION OF TRANSACTION CLAIM AMOUNTS

6. The Class eligible under the Settlement to receive a portion of the Net Settlement Fund includes all persons and entities, wherever located, that transacted in U.S. Treasury Futures or Options on U.S. Treasury Futures on United States-based exchanges, including but not limited

to the Chicago Mercantile Exchange ("CME"), including its subsidiary the Chicago Board of Trade ("CBOT"), from April 1, 2008, through January 31, 2016 (the "Settlement Class Period"). Excluded from the Settlement Class are (i) any judicial officer presiding over this Action, and the members of his or her immediate family and judicial staff; (ii) the United States Government; and (iii) the Defendants and any past or present parent, subsidiary, affiliate or division of any Defendant; provided, that any Investment Vehicle shall not be excluded from the Settlement Class, but under no circumstances may JPMorgan (or any of its past or present parents, subsidiaries, affiliates, or divisions) receive a distribution for its own account from the Settlement Fund through an Investment Vehicle.  Also excluded from the Settlement Class is any Person or entity who or which properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with FED. R. CIV. P. 23(c) and in accordance with the procedure to be established by the Court.

      a.    "U.S. Treasury Futures" means (i) 2-year T-Note Futures; (ii) 3-year T-Note Futures; (iii) 5-year T-Note Futures; (iv) 10-year T-Note Futures; (v) Ultra 10-year T-Note Futures; (vi) U.S. Treasury Bond Futures; and (vii) Ultra U.S. Treasury Bond Futures.

      b.    "Options on U.S. Treasury Futures" means any option on U.S. Treasury Futures.

7.    For each U.S. Treasury Futures transaction, Claimants must provide the following information for each of their individual transactions: (a) the specific contract traded (*e.g.*, ZBH3

or March 2013 U.S. Treasury Bond Futures); (b) trade date (*e.g.*, January 15, 2013); (c) the volume of contracts traded (*e.g.*, 5); and (d) the price of the futures contract in points (*e.g.*, 145.00).[1]

8. For each Options on U.S. Treasury Futures transaction, Claimants must provide the following information for each of their individual transactions: (a) the specific contract traded (*e.g.*, ZBM3 or Option on U.S. Treasury Bond Futures expiring in June); (b) trade date (*e.g.*, April 26, 2013); (c) the volume of contracts traded (*e.g.*, 1); (d) the price of the futures contract (*e.g.*, 144.00); (e) option type (*i.e.*, call or put); (f) option expiry type (*e.g.*, American Option); (g) option strike price (*e.g.*, 142.00); (h) option premium (*e.g.*, 0.35); and (i) option settlement date, also referred to as the option exercise date (*e.g.*, April 26, 2013).

9. Claimants are also required to provide the following information: (j) whether the Claimant has submitted or intends to submit a Victim Impact Statement[2] to the U.S. Department of Justice ("DoJ") related to U.S. Treasury Futures or Options on U.S. Treasury Futures in connection with JPMorgan's Deferred Prosecution Agreement; and (k) whether the Claimant received any payment from the DoJ related to U.S. Treasury Futures or Options on U.S. Treasury Futures in connection with JPMorgan's Deferred Prosecution Agreement.[3]

10. **Instrument Amount.** Using the transaction data, the Settlement Administrator will calculate an "Instrument Amount" for each transaction by a Class Member. The Instrument

---

[1] For Class Members whose records do not include the purchase price of the futures contract, the Settlement Administrator will apply the contract price as of the close of business on the trade date. Class Members can leave this field blank.

[2] *See* Victim Notification Program, *Victim Impact Statement*, Listed Under *JPMorgan Chase & Co., Deferred Prosecution Agreement (DPA), Court Docket No.: 20-CR-175*, The United States Department of Justice (updated Apr. 29, 2022), *available at:* https://www.justice.gov/criminal-vns/file/1320701/download.

[3] *See* Deferred Prosecution Agreement, ECF No. 11, *United States v. JPMorgan Chase & Co.*, No. 3:20-cr-00175 (D. Conn.).

Amount is the product of three different factors: a "Volume Multiplier," "Instrument Multiplier," and a "Futures Contract Specification Multiplier."

$$\textbf{\textit{Instrument Amount}} \\ = Volume\ Multiplier \times Instrument\ Multiplier \\ \times Futures\ Contract\ Specification\ Multiplier$$

11. Interim Co-Lead Class Counsel determined the "Volume Multiplier," "Instrument Multiplier," and "Futures Contract Specification Multiplier" based on Class Plaintiffs' allegations, current publicly available information concerning U.S. Treasury Futures and Options on U.S. Treasury Futures, and in consultation with their consulting experts.

12. **Volume Multiplier.** The Volume Multiplier reflects the notional value of the transaction and is determined by taking the product of: (i) the number of futures contracts traded; (ii) the futures contract price, denominated in index points (or in the case of options, the option premium); and (iii) the "Notional Dollar Value per Index Point" which accounts for the dollar value of each index point.

$$\textbf{\textit{Volume Multiplier}} \\ = Number\ of\ Contracts\ Traded \\ \times Futures\ Price\ (or\ Option\ Premium)\ in\ Index\ Points \\ \times Notional\ Dollar\ Value\ per\ Index\ Point\ /\ \$1m$$

13. The futures contract price represents the price in 100 points, as quoted on the CME. The Notional Dollar Value per Index Point for all futures contracts are valued at $1,000 per point, except for the (a) 2-year T-Note Futures and (b) 3-year T-Note Futures, which are valued at $2,000 per point.[4] The resulting notional values are divided by $1 million.

---

[4] The 2-year T-Note Futures contract and 3-year T-Note Futures contract respectively have a notional value at maturity of $200,000. In contrast, the remaining U.S. Treasury Futures contracts have a notional value at maturity of $100,000.

5

14. **Instrument Multiplier.**  The Instrument Multiplier will be as follows:

   a. U.S. Treasury Futures – Eligible Transactions in U.S. Treasury Futures will receive an Instrument Multiplier of 1.0.

   b. Options on U.S. Treasury Futures - Eligible Transactions in call Options on U.S. Treasury Futures will receive an Instrument Multiplier of 0.44. Eligible Transactions in put Options on U.S. Treasury Futures will receive an Instrument Multiplier of 0.40.

15. **Futures Contract Specification Multiplier.**  The Futures Contract Specification Multiplier accounts for the impact of Defendants' spoofing on US. Treasury Futures contracts. Table 1 below is a chart reflecting the Futures Contract Specification Multiplier.  The multipliers below are only valid during the Class Period; any transaction outside of the Class Period, or otherwise not covered by the table below is assigned a multiplier of zero.

| Expiry | Ultra T-Bond | T-Bond | 10 Year T-Note | 5-Year T-Note | 2-Year T-Note | Ultra 10-Year T-Note | 3-Year T-Note |
|---|---|---|---|---|---|---|---|
| June 2008 | 2 | 23 | 3 | 3 | 1 | n/a | 1 |
| September 2008 | 3 | 39 | 4 | 4 | | | |
| December 2008 | 2 | 23 | 3 | 3 | | | |
| March 2009 to March 2010 | | | 1 | | | | |
| June 2010 | | | | | | | 0.1 |
| September 2010 | | | | | | | |
| December 2010 | 10 | 29 | 6 | 5 | 1 | | |
| March 2011 | 14 | 53 | 22 | 10 | 2 | | |
| June 2011 | 9 | 33 | 7 | 6 | 1 | | |
| September 2011 | 20 | 34 | 13 | 7 | | | |
| December 2011 | 54 | 86 | 15 | 13 | 2 | | |
| March 2012 | 6 | 26 | 7 | 5 | 1 | | |
| June 2012 | 7 | 24 | | 25 | 2 | | |
| September 2012 | 10 | 38 | 6 | 7 | 1 | | |
| December 2012 | 6 | 25 | 4 | 3 | | | |
| March 2013 | 4 | 8 | 2 | 1 | | | |
| June 2013 | 2 | 7 | | | | | |
| September 2013 | 4 | 35 | 4 | 4 | | | |
| December 2013 | 6 | 32 | | | | | |
| March 2014 | 5 | 9 | 1 | 1 | | | |
| June 2014 | 3 | 10 | | 2 | | | |
| September 2014 | 2 | 14 | | | | | |
| December 2014 | 3 | 20 | 2 | | | | |
| March 2015 | 5 | 36 | 4 | 4 | | | |
| June 2015 | 4 | 44 | 5 | 5 | | | |
| September 2015 | 6 | 34 | 4 | 4 | | | |
| December 2015 | 17 | 116 | 13 | 14 | 3 | | |
| March 2016 | 7 | 32 | 4 | 4 | 1 | 5 | |
| June 2016 onwards | | | 1 | | | | |

16.  **Example Calculation of Instrument Amount.**  To demonstrate the calculation of the Instrument Amount, assume that a trader purchased eighty-five (85) 10-year T-Note Futures expiring in March 2011 at a quoted price of 118 points.  Because the Notional Dollar Value per Index Point for the 10-year T-Note Futures contract is $1,000, the Volume Multiplier is 10.03 points [(85 contracts * 118 * $1,000)/$1,000,000].  The Instrument Multiplier is one (1) point.  The

7

Futures Contract Specification Multiplier is twenty-two (22) points. As a result, the Instrument Amount is 220.66 points [Volume Multiplier of 10.03 * Instrument Multiplier of 1 * Futures Contract Specification Multiplier of 22].

17. The Settlement Administrator will calculate an Instrument Amount for each transaction by a Class Member and sum the Instrument Amounts to determine the Class Member's "Transaction Claim Amount." **The Transaction Claim Amount is not the Claimant's payment amount.**

## PRO RATA SHARE DETERMINATIONS

18. For each Class Member a *pro rata* fraction is calculated as the Class Member's Transaction Claim Amount divided by the total of all Transaction Claim Amounts.

$$Pro\ Rata\ Fraction = \frac{Transaction\ Claim\ Amount}{Total\ of\ all\ Transaction\ Claim\ Amounts}$$

19. The Net Settlement Fund will then be distributed to each Class Member as follows:

$$Payment\ Amount = \begin{cases} Minimum(Net\ Settlement\ Amount \times Pro\ Rata\ Fraction, A - B), if\ A > B \\ 0, if\ A \leq B \end{cases}$$

Where:

$A = (Net\ Settlement\ Fund + DoJ\ Victim\ Compensation\ Amount) \times Pro\ Rata\ Fraction$;

$B = DoJ\ Payment$;

$DoJ\ Victim\ Compensation\ Amount$ equals $33,584,906[5];

$DoJ\ Payment$ is the amount received from the DoJ related to U.S. Treasury Futures or Options on U.S. Treasury Futures in connection with JPMorgan's Deferred Prosecution Agreement; and,

Function $Minimum(Net\ Settlement\ Amount \times Pro\ Rata\ Fraction, A - B)$ gives the smaller number between (i) ($Net\ Settlement\ Amount \times Pro\ Rata\ Fraction$) and (ii) ($A - B$).[6]

20. For example, a Class Member who has not submitted or does not intend to submit a Victim Impact Statement to the DoJ, or who has submitted a Victim Impact Statement but received no DoJ Payment, will receive a Payment Amount calculated as follows:

$$Payment\ Amount = Net\ Settlement\ Fund \times \frac{Transaction\ Claim\ Amount}{Total\ of\ all\ Transaction\ Claim\ Amounts}$$

21. The exception to this will be Class Members whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim. These Class Members will receive a Minimum Payment Amount in an amount to be determined after the Claim Forms are reviewed, calibrated to ensure that a minimal portion of the Net Settlement Fund is reallocated

---

[5] *See* Deferred Prosecution Agreement, ECF No. 11 at ¶ 75, *United States v. JPMorgan Chase & Co.*, No. 3:20-cr-00175 (D. Conn.).

[6] This is mathematically equivalent to capping the Payment Amount at $(A - B)$.

towards Authorized Claimants receiving the Minimum Payment Amount. These Class Members will receive a Minimum Payment Amount of at least $15.00. After determining the portion of the Net Settlement Fund that will be used to make the Minimum Payment Amounts, the remainder of the Net Settlement Fund will be reallocated *pro rata* among the remaining Class Members.

**AUDITS**

22.     By submitting a Claim Form, a Class Member agrees to furnish such additional information as the Settlement Administrator or the Court may require.  Further, by submitting a Claim Form, a Class Member is swearing to the truth of the statements contained in it and, if applicable, the genuineness of the data and documents attached thereto, subject to penalty of perjury under the laws of the United States of America.  The making of false statements or the submission of forged or fraudulent documentation will result in the rejection of a claim and may subject the filer to civil liability or criminal prosecution.

23.     The Settlement Administrator may request any Class Member, as deemed appropriate by the Settlement Administrator, who file claims a Claim Form to provide documentation to support certain transactions or any other aspect of the claim submission.  Even if the Class Member provided a letter/affidavit attesting to the truth and accuracy of the data and claim overall, the Settlement Administrator may require specific documentary evidence (statements, confirmations, or the equivalent) to independently verify the details of the transactions and/or other aspects of the claim submission.  Failure to comply with such an audit request will result in the rejection of the claim.

**COURT REVIEW**

24.     All proceedings with respect to the administration, processing, and determination of claims, and the determination of all disputes relating thereto, including disputed questions of law and fact with respect to the validity of the claims and information on the Claim Forms, shall be subject to the jurisdiction of the Court.  To the extent the Settlement Administrator rejects a Claim Form, either in whole or in part, the Claimant will be advised in writing of the reasons for the rejection and that the Claimant will have the opportunity to seek Court review of the Settlement

Administrator's rejection. All Claimants expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to the Court's determination.

## **DISTRIBUTION**

25. After the Effective Date of the Settlement, and once the Settlement Administrator has determined the amounts of all Authorized Claimants' distributions under this Distribution Plan, Interim Co-Lead Class Counsel will apply to the Court for an order to distribute the Net Settlement Fund.